ZAITZEFF *v* RASCHKE

OPINION OF THE COURT

1. TRIAL—JURY—CONTACT WITH JURY—PREJUDICE—NEW TRIAL.
  Judgment of a circuit court should be reversed where the trial judge entered the jury room for whatever confab took place there; that alone should result in a summary order for new trial because a defeated party cannot "prove prejudice" in such a case.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 904.
[2, 3] 5 Am Jur 2d, Appeal and Error § 621.

Adams and T. E. Brennan, JJ.

2. Trial—Witnesses—Jury—Testimony—Attorney and Client—
Appeal and Error—Prejudice.

*No prejudice resulted to plaintiffs by the reading to the jury,
in the absence of plaintiffs' attorney, a portion of the tes-
timony of one of plaintiffs' witnesses where that testimony
was helpful to the plaintiffs and the re-reading of such
testimony could only have been to plaintiffs' advantage and
could hardly have been called adverse or prejudicial to plain-
tiffs' case.*

3. Trial—Jury—Attorney and Client—Appeal and Error—Prej-
udice.

*Prevention of irregularities in the conduct of jury deliberations
is in part the responsibility of lawyers and where they vol-
untarily absent themselves from the courtroom they should
not be heard to complain of informalities and shortcuts in-
dulged in by a busy circuit judge in good faith which re-
sult in no prejudice to either party.*

Appeal from Court of Appeals, Division 1, V. J.
Brennan, P. J., and J. H. Gillis and Jeanette, JJ.,
affirming Wayne, Charles Kaufman, J. Submitted
April 4, 1972. (No. 1 April Term 1972, Docket No.
53,309.) Decided June 20, 1972.

31 Mich App 87 reversed.

Complaint by Mary Zaitzeff and Peter Zaitzeff
against Marion Raschke and Joseph W. Raschke
for damages for injuries resulting from a dog bite
and loss of consortium. Judgment for defendants.
Plaintiffs appealed to the Court of Appeals. Af-
firmed. Plaintiffs appeal. Reversed.

*Samuel W. Barr (Carroll C. Grigsby,* of counsel),
for plaintiffs.

*Lizza & Mulcahy,* for defendants.

BLACK, J. (*for reversal*). I am the author of that intracourt memorandum which Justice T. E. BRENNAN has recalled, *post* at pp 581–582. It speaks sufficiently my view that the judgment of the circuit court should be reversed.

With what was written so plainly in 1961 for *Wilson* v *Hartley,* 365 Mich 188, concerning the indefensible practice of entering the jury room while the jurors are there, no matter by whom done, one would think that this Court had said enough to prevent what took place here. Yet the practice seems to go on, and on, and on, encouraged occasionally by "no prejudice shown" conclusions of a group of Justices who cannot hope to know what was said, or done, or gestured, or hinted, in the sanctity of the jury room.

I would reverse.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with BLACK, J.

T. E. BRENNAN, J. (*for affirmance*). Plaintiff Mary Zaitzeff, a real estate saleswoman, was attacked by defendants' German shepherd dog while showing defendants' house to some prospective buyers. Plaintiffs filed an action in the Wayne Circuit Court based upon the dog-bite statute and common-law liability.* Trial proceeded before a jury, the Honorable Charles Kaufman presiding.

At the conclusion of the circuit judge's charge to the jury, both counsel and the judge retired to his chambers accompanied by the court stenographer. A colloquy ensued regarding the charge to the jury, at the conclusion of which the record shows that the following was said:

---

* MCLA 287.351; MSA 12.544; see, *e.g., Grummel* v *Decker,* 294 Mich 71 (1940).

"*The Court:* * * * I am satisfied what I gave
is substantially the law.

"Now, would you gentlemen waive the adminis-
tration of the oath to the sheriff?

"*Mr. Barr* [*plaintiffs' attorney*]: I will waive
administration of the oath and I will waive being
present at the time the jury returns and would re-
quest that the jury be polled.

"*The Court:* Mr. Mulcahy?

"*Mr. Mulcahy* [*defendants' attorney*]: I will
waive the sheriff's oath.

"*The Court:* What about—will you waive your
presence at the verdict?

"*Mr. Mulcahy:* Yes, your Honor. I will stick
around for a while. If I am not here, go ahead and
take it."

The jury retired to commence its deliberations
about 10:10 a. m. Approximately fifty minutes
later, the jury returned to the courtroom presuma-
bly in the absence of counsel and the following took
place:

"*The Court:* Members of the jury, I saw your
note in which you indicate you wish to hear the
testimony of Mr. Smolinski. I would prefer not to
read it back to you because of a number of reasons.
First, I would rather not have the testimony of any
one particular witness emphasized at this point. I
mean you have to listen to the whole case and listen
to all the testimony. Try to have your collective
minds recall what Mr. Smolinski testified if you
think that anything he testified is material. As I
recall his testimony, he was not an eye-witness to
the incident. He came in afterwards and I don't
think that his testimony would put too much light on
what actually happened when Mrs. Zaitzeff entered
the house. However, if after your deliberations you
still feel that you want his testimony read back,
well, let me know and perhaps we can work it out.

"*Juror Derro:* Could I say it off the record, the one point? The reason we want it is—it has nothing to do with the incident of the dog but, rather, prior to that. That is, the—it concerns the entering of the house.

"*The Court:* Yes.

"*Juror Derro:* In other words, it concerns the one issue: Was she invited or was she not? It has nothing to do with the dog attacking or—

"*The Court:* I assume you all want to hear that portion of his testimony?

"(Whereupon, the jurors indicated 'yes' en masse.)

"*The Court:* I will have the reporter look it up and when he finds it he will come back and read it to you.

"(About 11:10 a.m.)

"(Whereupon, the Court and the court reporter entered the jury room at about 11:20 a.m., and the court reporter read a portion of the testimony of William Smolinski to the jury.)"

About an hour later a verdict of no cause of action was returned. A poll of the jurors disclosed that the verdict was by a vote of ten to two.

Plaintiffs filed a motion for new trial, which was denied. Therefore, plaintiffs appealed and the Court of Appeals affirmed in a *per curiam* opinion. 31 Mich App 87 (1971). We granted leave to appeal. The most succinct explanation of our object in reviewing this cause can be found in an intra-court memorandum by one of the Justices:

"I would grant leave. The trial judge entered the juryroom for whatever confab took place there; we know not what. That alone should result in a summary order for new trial.

"How in h—— can the defeated party 'prove prejudice' in such a case? He has had no invisible witness there, and the opportunity of and for concealed prejudice alone should be enough for a Court

which prates regularly its devotion to the sanctity
of the right of trial by jury."

Plaintiffs concede that the reading to the jury of
a portion of testimony given at the trial lies within
the sound discretion of the trial court. But plain-
tiffs argue here that the record is silent as to the
portion of witness Smolinski's testimony which was
re-read to the jury. In further support of plaintiff
Mary Zaitzeff's position, she points to the com-
mentary to GCR 1963, 512 in Michigan Court Rules
Annotated, volume 2, p 493, where it was said:

"All communications between the trial judge and
the jury, after submission of the case, must take
place in open court and in the presence of, or after
notice to, the parties or their counsel, and the court
has no right, without the consent of counsel, to send
to the jury room an answer to a question propounded
in writing to him by the jurors. M.L.P. Trial § 306:
and see, Donville v. Russell, 1879, Howell, N.P. 8;
Finkel v. Atto Misch Co., 1940, 291 Mich. 630, 289
N.W. 276; Hopkins v. Bishop, 1892, 91 Mich. 328, 51
N.W. 902."

Defendants on the other hand argue that the
instant suit is controlled by the precedent to be
found in the *Loose* v *Deerfield Twp,* 187 Mich 206
(1915). Defendants quote from that opinion as
follows:

"After deliberating for a time, the jury came into
court and indicated that there was some disagree-
ment between them as to the testimony of certain
witnesses who had testified upon the trial. There-
upon the court ordered the stenographer to read the
testimony of two witnesses, after which the jury
again retired to their room. *This action of the trial*

*court is assigned as error, because it was done in the absence of defendant's counsel, and because certain other testimony should have been read in order to give them a correct understanding of the matter in doubt."*

The Court continuing, held:

"It is sufficient to say of those objections that counsel was aware that the jury were deliberating, and they were also aware of the fact that such requests are not infrequently made by juries during their deliberations and granted. With this knowledge, *if they chose to absent themselves from the courtroom, they are in no position to complain of the trial court because he complied with the request of the jury,* nor because he omitted to have read certain other testimony in the record which would have thrown some light on the question about which inquiry was made." (Italics supplied by defendants.)

The defendants further argue that the witness whose testimony was re-read to the jury was a witness called by the plaintiffs. Defendants point out that the testimony of Mr. Smolinski was helpful to the plaintiffs and that the re-reading of any portion of such testimony could only have been to the advantage of the plaintiffs. From this defendants argue that no prejudice to the plaintiffs' cause was shown by the procedure followed and here objected to. A close reading of the testimony of Mr. Smolinski bears out the defendants' argument. Even the cross-examination of Mr. Smolinski could hardly be called adverse or prejudicial to plaintiffs' case.

"CROSS EXAMINATION BY MR. MULCAHY:
"*Q.* Just a couple things, Sergeant. May I examine from here, your Honor?
"*The Court:* Sure.

"*Q.* (By Mr. Mulcahy) You were parked in your car across the street from Mr. and Mrs. Raschke's home, is that right?

"*A.* Yes, at a slight angle.

"*Q.* By a slight angle you mean you weren't directly in front of her home?

"*A.* Not directly, no.

"*Q.* And you were parked on the opposite side of the street, is that correct?

"*A.* Yes.

"*Q.* Would you have to look over your left shoulder to see the front of Mrs. Raschke's home?

"*A.* No.  I just had to move my head.

"*Q.* Toward the left, is that it?

"*A.* Yes.

"*Q.* What time of day was this?

"*A.* This was in the afternoon.  I don't know the exact time.  Early afternoon.

"*Q.* And you indicated that Mrs. Zaitzeff stayed on the porch for about two minutes—

"*A.* Yes.

"*Q.* — before she went into the house, is that right?

"*A.* Yes.

"*Mr. Mulcahy:* I think that's all, Sergeant. Thank you very much."

Based upon the record made and certified here, we cannot conclude that any prejudice resulted in the reading to the jury of a portion of the testimony of witness Smolinski.  And if the events described had occurred in the courtroom the language quoted from *Loose* v *Deerfield Twp, supra,* would be directly in point and controlling without further discussion.

However, the fact that the judge entered the juryroom in the company of the court stenographer and permitted the testimony to be re-read to the jury in the juryroom rather than in the courtroom

remains a troublesome point as the quoted intra-court memorandum discloses. My colleague seems to believe that the mere *place* of the reading makes error presumptive. The record does not support any assumption that the proceedings which took place in the juryroom were anything other than what ought to have taken place in the courtroom.

The jurors were not engaged in their deliberations, they were in fact attending upon the court and listening to the reading of testimony in the presence of the court. No dark suspicions should be entertained by reason of the situs of these happenings. A familiarity with the demands upon courtroom space in Wayne County suggests reasons of convenience, for attending to this bit of business in the jury's room, rather than the courtroom, where other litigants may well have been gathered.

In my judgment, the difficulty here could best have been avoided had counsel remained in attendance. I see no reason to require a busy trial judge to duplicate his efforts as a means of sending a message to the trial bench. Rather let the word go forth to the Bar that the prevention of irregularities in the conduct of jury deliberations is in part the responsibility of lawyers. And where they voluntarily absent themselves from the courtroom they should not be heard to complain of informalities and shortcuts indulged in by a busy circuit judge in good faith which result in no prejudice to either party. I would affirm the decision of the trial judge and the Court of Appeals, with costs to the appellees.

ADAMS, J., concurred with T. E. BRENNAN, J.