PEOPLE v DOCKERY

1. Criminal Law—Sentencing—Presentence Report—Other Crimes—Consideration—Due Process—Polygraph Examinations—Accuracy.

Due process requires that a sentence not be based on inaccurate information and a sentencing court may not assume a defendant is guilty of other crimes based on a presentence report once the defendant has denied the allegations in it unless the court is presented with information establishing the validity of the other charges; a polygraph examination is not sufficiently accurate to be considered during sentencing to establish the validity of charges of other criminal conduct by the defendant.

2. Criminal Law—Sentencing—Polygraph Examinations—Presentence Reports—Other Crimes—Voluntary Consent.

The submission by a defendant to a polygraph examination after being asked by a sentencing judge to take the polygraph test to refute allegations of other criminal conduct contained in his presentence report does not constitute voluntary consent to inclusion of the results of the test in the presentence report where the defendant is faced with an adverse result if he refuses.

Appeal from Genesee, Philip C. Elliott, J. Submitted October 16, 1975, at Grand Rapids. (Docket No. 23299.) Decided November 14, 1975.

Willie L. Dockery was convicted, on his plea of guilty, of attempted use of a credit card known to be held or obtained without the consent of the cardholder. Defendant appeals. Remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A.*

Reference for Points in Headnotes
[1, 2] 21 Am Jur 2d, Criminal Law § 303.

*Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Milliken & Magee* (by *Richard Yuille),* for defendant.

Before: ALLEN, P. J., and DANHOF and M. F. CAVANAGH, JJ.

DANHOF, J. On September 23, 1974, defendant Willie Lee Dockery entered a plea of guilty to the charge of attempted use of a credit card known to be held or obtained without the consent of the cardholder. MCLA 750.157q; MSA 28.354(16), and MCLA 750.92; MSA 28.287. The defendant was sentenced to a term of a minimum of one year to a maximum of two years in prison on January 7, 1975. The defendant now appeals from the sentence.

In providing a factual basis for his plea of guilty, the defendant informed the trial court that he had pulled up to a Sears gas station and was getting a fill-up of gas, which he attempted to pay for by using the stolen credit card. He stated that he knew such use and possession of the credit card, which had another person's name on it, was without the consent of the cardholder. The defendant further indicated he had found the credit card near a highway intersection in Flint, Michigan.

The sentencing in this matter was originally set to occur on October 29, 1974. On that date, the trial court questioned the defendant about the circumstances surrounding his use and possession of the credit card. The trial court stated:

"*The Court:* Well, I think there are some things that I should inquire about. The presentence report advises

me that the credit card that you were using on the day that you were apprehended belonged to a Harold Light, a grocer. It was taken from him when his grocery was robbed, and prior to the time that you were apprehended with that card in your possession, a number of charges had been made against it totaling one-thousand, three-hundred and seventy-three dollars and twenty-one cents."

The defendant stated that he had no knowledge of the robbery and he denied using the credit card for the additional charges. The defendant did admit pasting his own picture on the driver's license found with the credit card. He further responded that he had found the credit card two or three days prior to his attempted use of it at the gas station. The trial court then stated:

"*The Court:* Well, Mr. Dockery, it would seem to me to be a very perverse twist of fate for a person with your substantial felony record to have found this wallet just a couple of days before you are arrested and have you paste over his driver's license your own picture when someone else, before that credit card and his license were on the ground, had charged up some thirteen-hundred dollars worth of fraudulent charges, and I do not believe you.

"I am therefore faced with a problem. If I am going to impose sentence upon you at this moment, I am going to sentence you on the assumption that your limited contacts with that credit card, that you admit here today, is untrue, but I would give you the opportunity to take a lie detector test with respect to these questions that I have asked you, and if you want to have an adjournment of this sentence so that you can have a lie detector test with respect to whether indeed you did find that wallet, his driver's license and credit card just a couple or three days before, and I will grant the adjournment. What do you want to do?"

The defendant stated that he would take the lie detector test and the sentence was adjourned.

On the date the defendant was sentenced, the trial court read the following polygraph test results, which were attached to the presentence report:

"Physiological reactions given on the examination of Willie Dockery were sufficient to indicate deception, and it is the opinion of the polygraphist that he did not find the stolen credit card near the expressway that he did have it more than three or four days, and that he did use the card prior to July thirtieth to obtain merchandise from Sears."

The defense attorney then objected to the use of the polygraph examination against the defendant. In sentencing the defendant, the court stated:

*"The Court:* Well, with respect to Mr. Yuille's *[defense attorney]* remarks, I am not going to say anything except to refer to the transcript that will be in the file concerning the occasion when on October the twenty-ninth, 1974, if my recollection is correct, you indicated a desire to have a polygraph examination, and it seems to me that in this case, all things taken into consideration, that the sentence that I should impose is one of imprisonment."

The issue raised on appeal is whether the trial court erred by imposing a polygraph examination on the defendant and then using the results of that examination to determine the sentence.

MCLA 771.14; MSA 28.1144 reads in relevant part:

"Sec. 14. Before sentencing any person charged with a felony, and, if directed by the court, in any other case where any person is charged with a misdemeanor

within the jurisdiction of the court, the probation officer shall inquire into the antecedents, character and circumstances of such person or persons, and shall report thereon in writing to such court or magistrate."

As to the above statute, *People v Lee,* 391 Mich 618, 636; 218 NW2d 655 (1974) stated:

"Under the statutory language, providing for inquiry into the defendant's 'antecedents, character, and circumstances', there are no formal limitations on the contents of the presentence report, but there are limitations dictated by due process."

In discussing the due process limitations on the presentence report, the court in *People v Lee, supra,* 638, ruled:

"We will not sanction a judge's making an assumption of guilt of other crimes on the basis of the presentence report. This is why courts reserve the authority to modify sentences where inappropriate considerations appear to have improperly affected the sentence."

Thus, the sentencing court may not assume the defendant is guilty of other crimes based on the presentence report.

Another limit imposed by due process is set forth by the court in *People v Hildabridle,* 45 Mich App 93, 95; 206 NW2d 216 (1973):

"Due process requires that a sentence not be based upon inaccurate information. When imposing sentence a judge may consider alleged criminal conduct which has not resulted in conviction. However, once a defendant has denied such allegations, the sentencing judge may consider such other criminal conduct only if presented with information establishing the validity of the other charges. *People v Zachery Davis,* 41 Mich App 683; 200 NW2d 779 (1972)."

*People v Davis,* 343 Mich 348, 371; 72 NW2d 269 (1955), found that according to various authorities the percentage of error in polygraph examination results was between 10% and 25%. *People v Levelston,* 54 Mich App 477, 479; 221 NW2d 235 (1974), stated the expert testimony in that case indicated a 10% error factor in polygraph examinations. As related to the admissibility of such tests in the determination of a sentence, *People v Allen,* 49 Mich App 148, 152; 211 NW2d 533 (1973), stated:

"Until polygraph tests become scientifically more reliable they must not become a part of a defendant's presentence report unless he consents to their inclusion."

The *Allen* court found it improper for the trial court to even ask the defendant if he were willing to take a polygraph examination.

Therefore, in light of the present state of the case law, a polygraph examination is not sufficiently accurate under due process to allow it to be imposed upon the defendant during sentencing in order to determine whether he is guilty of other criminal conduct.

In the present case, the trial court expressly assumed the defendant was lying as to his limited use of the credit card. It is apparent from the record of October 29, 1974 that the trial court implied the defendant was guilty of further misuse of the credit card in connection with an additional $1,300 in charges since the card was stolen. In line with *People v Lee, supra,* it was error for the trial court to assume such guilt based solely upon the presentence report indicated on the record.

Within this context, the defendant was asked if he would take a polygraph examination. Faced with an adverse result otherwise, the defendant

stated he would take the test. This did not constitute a voluntary consent. Upon receiving the polygraph examination results, which apparently confirmed its earlier assumption of guilt, the trial court gave the sentence. Based upon the aforementioned authority concerning the inaccuracy of polygraph tests, the trial court erred in basing its sentence on the information so derived.

Under the principles of due process, we hold the defendant's present sentence cannot stand. The defendant must now be resentenced before a different judge.

Remanded for proceedings consistent with this opinion. We do not retain further jurisdiction.