PEOPLE v ANDERSON

Docket No. 68053. Argued April 5, 1983 (Calendar No. 6).—Decided
November 22, 1983.

James Anderson was convicted by a jury in the Presque Isle
Circuit Court, Joseph P. Swallow, J., of conspiracy to commit
first-degree murder and of assault with intent to commit mur-
der. The Court of Appeals, MacKenzie, P.J., and R. B. Burns
and J. N. O'Brien, JJ., reversed in an unpublished opinion per
curiam on the ground that the dismissal of the conspiracy
charge for insufficient evidence in the separate trial of the
other person charged in the same conspiracy barred the defen-
dant's conviction (Docket No. 52147). The people appeal.

In an opinion by Justice Ryan, joined by Justices Brickley,
Cavanagh, and Boyle, the Supreme Court held:

The common-law "no one-man conspiracy" rule applies in a
joint trial of alleged co-conspirators where verdicts of guilty as
to one conspirator and not guilty as to the other would be
inconsistent and inherently defective. It does not apply in
separate trials of alleged co-conspirators, because the return of
different verdicts by separate juries is not inherently defective.
The conviction in this case is reinstated.

1. Conspiracy under Michigan law, as at the common law,
requires proof of an agreement between at least two persons for
conviction. In a joint trial of two co-conspirators, a verdict of
not guilty as to one conspirator and guilty as to the other
requires a judgment of acquittal of both, because the two
verdicts are inconsistent; the factfinder has found simultane-
ously that an agreement did and did not exist between the
same persons. But where the trials of conspirators are separate,
the acquittal of a conspirator by a jury or a finding by a trial
judge that insufficient evidence was presented to support a
conviction of conspiracy in one trial is not inconsistent with the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 16 Am Jur 2d, Conspiracy § 26.
[2] 58 Am Jur 2d, New Trial § 51.
[3, 4] 75 Am Jur 2d, Trial §§ 454, 492.
    Prosecution or conviction of one conspirator as affected by disposi-
    tion of case against coconspirators. 19 ALR4th 192.

conviction of another conspirator in a subsequent trial, because the quality of evidence is evaluated separately in the two trials. Whether the evaluation in the first trial was by the judge on a motion for a directed verdict of acquittal or by a jury in a verdict of not guilty has no bearing on the quality of the evidence in the second trial.

2. Reversal was not required because of the *ex parte* communication between the trial judge and the jury in this case, but that result should not turn on the fact that the communication occurred before the jury began to deliberate. Whether the jury had begun deliberating or not is irrelevant to a determination that the defendant must show actual prejudice. The crucial fact in determining whether the defendant is relieved of the obligation of showing prejudice is whether the jury had actually retired and was in the jury room when the *ex parte* communication occurred. Generally, where the jury has so retired, a new trial may be ordered without a separate showing of prejudice. However, in this case, the trial judge announced to the parties his intention to communicate with the jury outside their presence, and the parties agreed to the procedure. The parties' rights to fair deliberations were not violated, and a new trial is not required absent a showing of prejudice. A better, simpler, and wiser practice would be to require a trial judge to communicate with a jury only from the bench and on the record.

Justice Levin, joined by Chief Justice Williams and Justice Kavanagh, would also reinstate the defendant's conviction, but for different reasons. Inconsistent conclusions of law in separate trials of alleged conspirators concerning the sufficiency of evidence of a conspiracy do not require the dismissal of a conspiracy charge against one conspirator or a reversal of a conviction of conspiracy on appeal on the ground that a similar charge was dismissed in the trial of another conspirator. Rather, the defendant may move for a directed verdict or postconviction relief in the trial court, or appeal on the ground that the evidence presented was insufficient to allow the case to be submitted to the jury.

1. At common law, because conspirators were tried jointly and because a conspiracy involved the combined acts of two or more persons, it was generally held that where a jury convicted one person of a conspiracy, but acquitted all other alleged conspirators, the conviction could not stand. As separate trials of alleged conspirators began to occur with greater frequency, the rule was re-examined, leading to a growing body of precedent to the effect that acquittal of all alleged conspirators but one does not preclude conviction of the remaining conspirator

or require the setting aside of the conviction on appeal. Moreover, this case is not one in which a jury or juries acquitted all the alleged conspirators but one, and thus arrived at inconsistent determinations of facts; it is one in which two courts arrived at assertedly inconsistent legal conclusions.

2. Sufficiency of the evidence is a question of law, not of fact. A court has no power to decide which of two inconsistent factual determinations made by a jury or juries on insufficient evidence is the correct one, but on the question of law, the sufficiency of the evidence, there is only one correct determination. A trial or appellate court can review the record evidence adduced at the trial of the conspirator who is convicted to determine whether it was sufficient, and is obliged to set aside the conviction if it was not. But the defendant cannot properly seek the benefit of the determination made in the trial of the other conspirator that the evidence was insufficient, if that determination was demonstrably incorrect. In the defendant's trial, the court determined that the evidence was sufficient; in the trial of the other alleged conspirator, the trial court determined that it was not and dismissed the charge. The defendant's recourse is to persuade his trial court, on a motion for a directed verdict or post-conviction relief, or an appellate court, that the evidence was insufficient. He should not be precluded from filing a delayed motion for post-conviction relief on that ground.

3. The defendant's contentions that because the trial judge communicated with the jury after instructing it to advise it to commence deliberations, because the trial court denied the defendant's pretrial motion to suppress expert testimony offered by the people regarding the size of a bullet which wounded the victim, and because the presentence report included a polygraph examiner's opinion that the defendant had lied, he is entitled to reversal, are without merit. The trial judge announced his intention to discuss the instructions he had just given with both lawyers and then to advise the jury to commence deliberations if there were no more instructions, and there was no objection. Where the jury has commenced deliberations and there is an *ex parte* communication between the judge and jury a new trial will be ordered, but in this case only a few minutes had elapsed and the jury had not begun deliberation and the only communication was that the jury could begin deliberation. Because of this and because there was no objection to the announced intention, a new trial is not required. The trial court offered to provide public funds to the defendant to obtain expert testimony regarding the size of the bullet, but

the evidence was not introduced because defense counsel stipu-
lated to the size. Finally, the defendant raised no objection
before sentencing to the inclusion of a reference in the presen-
tence report to the polygraph examination, nor did he request
in the trial court that the report be redacted to exclude the
reference and, therefore, the claim cannot be considered on
appeal.

Reversed.

### Opinion of the Court

1. Conspiracy — Evidence — Inconsistent Convictions — Valid-
   ity.

   A verdict of not guilty as to one of two conspirators and a verdict
   of guilty as to the other in a joint trial requires a judgment of
   acquittal of both, but where the trials of conspirators are
   separate, the acquittal of a conspirator by a jury or a finding by
   a trial judge that insufficient evidence was presented to support
   a conviction of conspiracy in one case is not inconsistent with
   the conviction of another conspirator in a subsequent case
   (MCL 750.157a; MSA 28.354[1]).

2. New Trial — *Ex Parte* Communication With Jury — Prejudice.

   Whether an *ex parte* communication between a trial judge and a
   jury requires reversal of a conviction without a showing of
   prejudice does not depend on whether the communication
   occurred before the jury began to deliberate, but whether the
   jury had retired and was in the jury room at the time of the
   communication, which relieves the defendant of the obligation
   of showing prejudice; however, where a trial judge announced
   his intention to communicate with the jury *ex parte,* and the
   parties agreed, the parties' rights to fair deliberations were not
   violated and a new trial was not required, absent a showing of
   prejudice.

### Separate Opinion by Levin, J.

3. Conspiracy — Evidence — Sufficiency — Inconsistent Conclu-
   sions of Law — Convictions — Validity.

   *Inconsistent conclusions of law in separate trials of alleged con-
   spirators concerning the sufficiency of evidence of a conspiracy
   do not require the dismissal of a conspiracy charge against one
   conspirator or reversal of his conviction of conspiracy on appeal
   on the ground that a similar charge was dismissed in the trial
   of another conspirator; rather, the defendant may move for a
   directed verdict or post-conviction relief in the trial court, or
   appeal, on the ground that the evidence presented was insuffi-*

*cient to allow the case to be submitted to the jury (MCL 750.157a; MSA 28.354[1]).*

4. CONSPIRACY — EVIDENCE — SUFFICIENCY — INCONSISTENT CONCLU-
   SIONS OF LAW — CONVICTIONS — VALIDITY.
   *Inconsistent conclusions of law regarding the sufficiency of evi-
   dence in separate trials of alleged conspirators which resulted
   in the conviction of one conspirator where the evidence was
   submitted to the jury and the dismissal of the conspiracy
   charge against the other where it was not did not require
   dismissal of the conspiracy charge against the first conspirator
   or a reversal of his conviction (MCL 750.157a; MSA 28.354[1]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Donald J. McLennan,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

State Appellate Defender (by *Richard B. Ginsberg)* for the defendant.

RYAN, J. I agree with my colleague that the Court of Appeals erred reversibly in this case when it set aside the defendant's conviction for conspiracy to commit murder. I am constrained to write separately, however, because I believe there is a different and more correct rationale for the decision we reach on both points to which my colleague has written.

## I

There can be no question that Michigan is a "no one-man conspiracy" state. Our conspiracy statute is a bilateral conspiracy statute which requires proof of an agreement between two or more persons. It is not, as the people contend, a unilateral conspiracy statute that allows conviction without proof of agreement between two or more persons. The Michigan statute provides:

"Any person who *conspires together* with 1 or more
persons to commit an offense prohibited by law, or to
commit a legal act in an illegal manner is guilty of the
crime of conspiracy punishable as provided herein".
(Emphasis added.) MCL 750.157a; MSA 28.354(1).

To interpret the foregoing statutory language as
a unilateral conspiracy law would effectively write
out of the statute the word "together". Moreover,
our cases have consistently held that "there can be
no conspiracy without a combination of two or
more persons". *People v Atley,* 392 Mich 298, 310;
220 NW2d 465 (1974); *People v DiLaura,* 259 Mich
260, 262; 243 NW 49 (1932).

Since the statute requires proof of an agreement
of at least two persons, the common-law "no one-
man conspiracy" rule is applicable. That rule pro-
vides that "if two are tried together for a conspir-
acy in which *no additional persons are implicated,*
a verdict finding one guilty and the other not
guilty requires a judgment of acquittal of both".
See Perkins, Criminal Law (2d ed), p 622. The
purpose of the rule at the common law was to
prevent the enforcement of inherently defective or
inconsistent verdicts in conspiracy cases. Such
inconsistency resulted when, in the joint prosecu-
tion of several alleged conspirators, one co-conspir-
ator was convicted while all of his alleged co-con-
spirators were acquitted. The effect analytically
was that the factfinder in such cases found simul-
taneously that "an agreement between two or
more persons" existed and that it did not exist
with regard to the same alleged conspirators. At
common law the rule was easily applied since co-
conspirators were always tried jointly and a per se
rule fulfilled the rationale underlying the common-
law "no one-man conspiracy" rule, precluding in-
herently defective or inconsistent verdicts.

As my brother points out, however, it has come to be more and more commonplace that alleged co-conspirators are tried separately as in the case at bar. The question arises then whether the "no one-man conspiracy" rule is violated when one of two alleged co-conspirators is convicted following a verdict of acquittal or a directed verdict of acquittal for insufficiency of evidence of the conspiracy charge against the other co-conspirator in a previous trial. My colleague appears to conclude that the reason the "no one-man conspiracy" rule is inapplicable in the case before us is that the conspiracy charge against alleged co-conspirator Margaret Craze was dismissed by the trial judge as a matter of law on a motion for directed verdict, while defendant Anderson was later convicted of the same alleged conspiracy by a jury. In my judgment, that distinction is of no significance.

For purposes of application of the "no one-man conspiracy rule", it matters not whether, in the separate trial of Craze, the trial judge found as a fact upon a motion for a directed verdict of not guilty that there was insufficient evidence of the conspiracy to submit the question to the jury or a jury returned a not guilty verdict in the case. The result is the same: a determination that no conspiracy existed. Whether the "no conspiracy" decision was made by the trial judge in the Craze case in ruling upon a motion addressed to the sufficiency of the evidence, as indeed it was, or by a jury, has no bearing whatever on the quality of the proof of a conspiracy in the subsequent and separate trial of Anderson.[1] The reason the "no

[1] Had Anderson and Craze been tried jointly and the case dismissed "as a matter of law" by the trial judge as to Craze, and Anderson later convicted of the conspiracy by a jury verdict, the distinction between the "legal" determination of no conspiracy and the later factual determination on the question would be of no moment in

one-man conspiracy" rule is inapplicable to Anderson's case is because he was not tried jointly with his alleged co-conspirator. It is simply irrelevant that the proofs in Craze's case were insufficient to survive a motion for a directed verdict. Anderson's trial was separate and the quality of the evidence in that case was separately evaluated.

I conclude, therefore, that the common-law "no one-man conspiracy" rule applies to the typical common-law situation, the joint trial of alleged co-conspirators resulting in inconsistent and therefore inherently defective verdicts. It does not apply where alleged co-conspirators are separately tried because there is no inherent defect when the separate juries return different verdicts in the separate trials. As is shown in *Platt v State,* 143 Neb 131; 8 NW2d 849 (1943), and its progeny, different verdicts in different conspiracy trials do not impeach one another since the verdict of acquittal may be based on many factors other than a failure to establish an agreement. Similarly, the fact that a trial judge makes a finding that the prosecuting attorney produced insufficient evidence to support a finding of conspiracy in a separate case against one conspirator does not preclude a jury in a subsequent trial from concluding that the evidence of conspiracy *in that case* was sufficient to warrant a verdict of guilty. The rationale, however, is not that the trial judge rejected the sufficiency of the evidence in one case rather than a jury rejecting it. The inapplicability of the "no one-man conspiracy" rule arises from the fact of separate trials.

## II

While I am in agreement with my colleague that

---

determining whether the "no one-man conspiracy" rule had been violated. The "no one-man conspiracy" rule would apply.

no reversible error resulted in this case from the *ex parte* communication by the judge with the jury, I cannot concur fully in the rationale advanced.

My colleague suggests three reasons that the *ex parte* communication with the jury was not prejudicial: 1) the communication occurred before the jury deliberations began, 2) the judge expressed his intention to engage in an *ex parte* communication with the jury, and 3) neither party objected to the communication even though they had been put on notice by the court.

While I agree with the second and third of the foregoing points, in my judgment the first of the factors noted by my colleague is of no consequence. Whether the jury had begun deliberating or not is irrelevant to a determination that the defendant must show actual prejudice. My view is fortified, I believe, by the decisions of this Court in the three cases cited by my colleague: *People v Kangas,* 366 Mich 201; 113 NW2d 865 (1962), *Zaitzeff v Raschke,* 387 Mich 577; 198 NW2d 309 (1972), and *People v Cain,* 94 Mich App 644; 288 NW2d 465 (1980), *rev'd* 409 Mich 858 (1980) (adopting dissenting opinion of M. F. CAVANAGH, 94 Mich App 647).

In *Kangas,* p 206, this Court declared that the defendant need not show prejudice when the *ex parte* communications between the judge and jury occur "after [the jurors] *have retired* for deliberations". (Emphasis added.) In *Zaitzeff,* p 579, this Court stated that the defendant need not show prejudice when the *ex parte* communications between the judge and the jury involved "entering the jury room *while* the jurors are there". (Emphasis added.) In *Cain,* the dissent which we adopted merely quoted the language of *Kangas* and *Zait-*

*zeff.* Consequently, the significant factor in determining whether a defendant is relieved of the obligation to show prejudice upon a claim of *ex parte* communications with the jury is not whether the jury has actually begun deliberations. The crucial fact is whether the jurors had "retired" and were in the jury room when the *ex parte* communications occurred.

In this case the jurors had indeed retired and were in the jury room when the trial judge went and spoke to the jurors. Consequently, the general rule expressed in *Kangas* and *Zaitzeff* would allow the defendant a new trial without a separate showing of prejudice. However, this is not an ordinary or general case. In this case, the trial judge, from the bench and on the record, expressed his intention to communicate with the jury outside of the presence of the parties. Both parties agreed to the procedure whereby the judge would go to the jury room, have the door opened, and instruct the jurors to begin deliberations. The purpose in prohibiting *ex parte* communications between a judge and the jury is to protect the parties' rights to fair deliberations. Where, as here, the judge acted with the parties' leave and no party or counsel for any party voiced any objection to the judge's proposed procedure, the rationale underlying the prohibition against *ex parte* jury communication is not violated, and the *ex parte* communication does not mandate a new trial without a showing of prejudice.

There is simply no showing of prejudice in this case, and I concur with my colleague's conclusion that a new trial is not required, but the commencement of deliberations should not be a factor in the determination. This view should not be taken in any way as approval of the practice

employed in this case. It was an unwise and potentially prejudicial procedure. The better, simpler, and wiser practice would require the trial judge to communicate with the jury only from the bench in the courtroom and on the record. While experience suggests that that may sometimes be a cumbersome and time-consuming procedure, it is a price worth paying to preserve the integrity of the factfinding process, the appearance of jury independence, and the avoidance of the expense, delay, and consumption of judicial resources involved in appellate evaluation of jury room contact between the court and the jurors.

Reversed.

BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RYAN, J.

LEVIN, J. (concurring in reversal). James Anderson was convicted of conspiracy to murder[1] and assault with intent to commit murder.[2] The other alleged conspirator, Margaret Craze, was tried separately and convicted of assault with intent to commit murder. The judge who presided at her trial dismissed the conspiracy charge because he determined that the evidence of conspiracy was insufficient.

The Court of Appeals reversed Anderson's conviction of conspiracy to murder[3] on the ground that the dismissal of the conspiracy charge against

---

[1] MCL 750.157a, 750.316; MSA 28.354(1), 28.548.

In exchange for his testimony against the other alleged conspirator, Margaret Craze, Anderson's conviction was reduced to a conviction of conspiracy to commit second-degree murder. MCL 750.317; MSA 28.549.

[2] MCL 750.83; MSA 28.278.

[3] The opinion of the Court of Appeals was not published. Anderson was sentenced to concurrent terms of 10 to 20 years on each count. Margaret Craze, convicted of assault with intent to commit murder, was placed on probation.

Margaret Craze vitiated his conviction of conspiracy to murder because there cannot be a one-person conspiracy.[4] We concur in reversal and reinstatement of Anderson's conviction of conspiracy to murder.

I

A conspiracy at common law is a combination of two or more persons.[5] On that basis, it was generally held that a jury verdict convicting one and acquitting all the other alleged conspirators could not stand.[6] There is dictum in a Michigan case stating that rule.[7]

It has been said that the rule is applicable without regard to whether the inconsistent verdicts were in one or in separate trials.[8] More recently, as separate trials of alleged conspirators,

---

[4] The Court of Appeals declared:

"There can be no one-man conspiracy. Because the crime of conspiracy is defined as a 'partnership in criminal purposes', *United States v Kissel,* 218 US 601, 608; 31 S Ct 124; 54 L Ed 1168 (1910), acquittal of one partner in an information charging two parties with conspiracy operates to bar prosecution or conviction as to the other person charged with the same act. *People v Alexander,* 35 Mich App 281, 283; 192 NW2d 371 (1971); see, generally, Anno: *Prosecution or Conviction of One Party to Alleged Conspiracy as Affected by Disposition of Case Against Other Parties,* 91 ALR2d 700."

[5] See *People v Heidt,* 312 Mich 629, 642; 20 NW2d 751 (1945), and *People v Cooper,* 326 Mich 514, 518; 40 NW2d 708 (1950), cited by the Court of Appeals in *People v Alexander,* fn 4 *supra.*

See LaFave & Scott, Criminal Law, § 61, p 453; Perkins, Criminal Law (2d ed), § 5, p 615; Clark & Marshall, Crimes (7th ed), § 903, p 562.

[6] See LaFave & Scott, fn 5 *supra,* § 62, p 488; Perkins, fn 5 *supra,* p 622; Clark & Marshall, fn 5 *supra,* § 907, p 583. See Anno: *Prosecution or Conviction of One Party to Alleged Conspiracy as Affected by Disposition of Case Against Other Parties,* 91 ALR2d 700, 705; Anno: *Prosecution or Conviction of One Conspirator as Affected by Disposition of Case Against Coconspirators,* 19 ALR4th 192, § 3, p 198.

[7] *People v Frye,* 248 Mich 678, 681; 227 NW 748 (1929); see also *People v Turner,* 86 Mich App 177, 183; 272 NW2d 346 (1978).

[8] LaFave & Scott, fn 5 *supra,* p 488; Anno: 19 ALR4th, fn 6 *supra,* § 3(b), p 205.

virtually unknown at common law,[9] have occurred with greater frequency, the courts have re-examined the rule, and there is a growing body of precedent to the effect that acquittal of all the other alleged conspirators does not preclude a conviction, or require setting aside of a conviction at an earlier trial, of the remaining alleged conspirator.[10]

All the cases relied on by Anderson to support his assertion that the dismissal of the conspiracy charge as to Craze requires that his conviction of conspiracy be overturned concern situations where a jury or juries acquitted all the alleged conspirators but one, and thus concern inconsistent factual determinations. These cases are not in point because the instant case does not concern inconsistent factual determinations, but assertedly inconsistent legal conclusions.

The question of sufficiency of evidence, although it concerns the evidentiary facts, is a question of law and not of fact. Where there is sufficient evidence to justify jury submission and inconsistent factual determinations, either determination is arguably correct. The jury or juries have the power to reach either determination and to bring

[9] See *Commonwealth v Byrd,* 490 Pa 544, 552; 417 A2d 173 (1980).

[10] See *Commonwealth v Byrd,* fn 9 *supra; People v Holzer,* 25 Cal App 3d 456, 460; 102 Cal Rptr 11 (1972); *Gardner v State,* 41 Md App 187; 396 A2d 303 (1979); *Platt v State,* 143 Neb 131; 8 NW2d 849 (1943); *United States v Espinosa-Cerpa,* 630 F2d 328, 332 (CA 5, 1980); cf. *Standefer v United States,* 447 US 10; 100 S Ct 1999; 64 L Ed 2d 689 (1980). See Anno: 91 ALR2d, fn 4 *supra,* § 14, p 730; Anno: ALR4th, fn 6 *supra,* § 3(b), p 204.

Anderson asserts that many of these decisions are not in point because they construe revised penal codes based on Model Penal Code § 5.03 which eliminates the requirement that there be an agreement by two or more conspirators and which permits conviction of conspiracy upon a showing of a unilateral as distinguished from a bilateral agreement. For commentary explaining the unilateral approach of the code, see Model Penal Code (Tentative Draft No. 10), § 5.03, p 104.

See *People v Atley,* 392 Mich 298, 310; 220 NW2d 465 (1974).

in asymmetrical verdicts, and neither a trial nor an appellate court is empowered to decide which is the correct determination or result or to conform the verdicts. Where, however, the question concerns the sufficiency of the evidence—a legal question—there is only one correct determination. A trial or appellate court can review the record evidence adduced at the trial of the alleged conspirator who is convicted—Anderson in the instant case—to determine whether there was sufficient evidence, and is obliged to set aside a conviction if the evidence is not sufficient. Anderson claims that the record evidence in both his case and that of Margaret Craze is substantially the same.

A defendant convicted of conspiracy may understandably maintain that the correct determination was reached by the jury which, in acquitting the other alleged conspirator, implicitly found that the people failed to prove that there was a conspiracy. A defendant cannot, however, properly seek the benefit of a determination that is, as a matter of law, demonstrably incorrect.

We conclude that inconsistent decisions concerning the sufficiency of evidence of a conspiracy do not require the dismissal of a conspiracy charge against the sole convicted conspirator. His recourse is to persuade the trial court, on a motion for a directed verdict or post-conviction relief, or an appellate court, that there was insufficient evidence to submit his case to the jury.

Anderson sought reversal on the ground that there is a rule requiring the setting aside of a conspiracy conviction per se where charges are dismissed against all the other alleged conspirators. There has been no briefing or argument on the sufficiency of the evidence. In writing for affirmance of Anderson's conviction, we would not

preclude the filing of a delayed motion for post-conviction relief on the ground that the evidence was insufficient.

## II

Anderson, on cross-appeal, raises three issues, none of which, in our opinion, justifies reversal.

The judge concluded his instructions with the statement that he would, before the jury commenced deliberations, discuss with the lawyers the instructions he had just given. If there were no additional instructions, he would then "personally come to your jury room and advise you that there will be no more instructions", whereupon "any verbal communication between us shall cease". After determining that there would be no further instructions, the judge announced that he would, with the consent of both counsel, advise the jury to commence deliberations, and apparently did so.

On remand from the Court of Appeals, there was an evidentiary hearing regarding the communication between the judge and the jury. We are persuaded, as was the Court of Appeals, that not more than a few mintues had elapsed between the time the jury left the courtroom and the time that the judge told the jury to begin deliberations, that during that time the jury had not begun deliberations, and that all that took place between the judge and the jurors was the judge's statement that the jury should begin its deliberations.

This Court has said that a new trial will be ordered where the jury has commenced deliberations and there has been an *ex parte* communication between the judge and the jury without regard to the defendant's failure or inability to show

prejudice.[11] In this case, however, the communication occurred before jury deliberation began and after the judge had announced the procedure he would follow, and no objection was made by Anderson's lawyer.

We conclude that because the judge announced his intention to personally come to the door of the jury room and there was no objection, and because this all occurred before deliberations began, the judge's communication with the jury stating that it could commence its deliberations does not require a new trial.

Anderson next claims that the judge erred in denying a pretrial motion to suppress expert testimony offered by the people at the preliminary examination concerning the size of a bullet which wounded Mrs. Craze's husband. In denying the motion, the judge offered to provide Anderson with county funds to obtain expert testimony. Anderson did not avail himself of this offer. At the trial, his counsel agreed to stipulate concerning the size of the bullet. Because of the stipulation, the expert testimony was not introduced.

Anderson was represented by different counsel on appeal than at trial. Appellate counsel stated, "At trial, faced with the holding that the testimony was admissible, defense counsel stipulated to the content of that testimony without requiring the witnesses to appear." The record does not, however, indicate why Anderson's lawyer so stipulated, or what may have been the agreement or understanding of the lawyers in that regard.

---

[11] See *People v Cain*, 409 Mich 858; 294 NW2d 692 (1980), granting defendant's motion for a new trial for the reasons stated in Justice CAVANAGH's dissenting opinion in *People v Cain*, 94 Mich App 644, 647; 288 NW2d 465 (1980); *People v Kangas*, 366 Mich 201, 206; 113 NW2d 865 (1962); *Zaitzeff v Raschke*, 387 Mich 577, 579; 198 NW2d 309 (1972).

While it may not have been necessary for Anderson's lawyer to renew his pretrial objection, absent a statement that the stipulation was on the understanding that the objection was preserved, we have no basis for proceeding on the assumptions that the stipulation did not constitute a waiver of the objection and that Anderson's trial counsel did not have an adequate reason for agreeing so to waive the expert testimony issue.

Finally, Anderson contends that he is entitled to resentencing because the presentence report contains the statement that during the investigation of the shooting of Mrs. Craze's husband, a polygraph examination was administered to Anderson and that the examiner was of the opinion that Anderson "lied about all his answers regarding knowledge of the shooting, but [the examination] was inconclusive as to whether he was being truthful in his answers to the question about whether he had shot Mr. Craze".

The Court of Appeals decisions relied on by Anderson "stand for the proposition that a trial court cannot induce a defendant to take a polygraph test with hints of favorable consideration at sentencing". *People v Towns,* 69 Mich App 475, 478; 245 NW2d 97 (1976).[12] The trial judge offered no such inducement in the instant case.

Anderson raised no objection before sentencing to the inclusion of this information, nor did he ask that the report be redacted to exclude reference to the polygraph examination. The record is silent as to why Anderson did not seek redaction. Trial counsel's decision to voice no objection may have been a deliberate choice and may, indeed, have

---

[12] The Court of Appeals discussed its earlier decisions in *People v Allen,* 49 Mich App. 148; 211 NW2d 533 (1973), and *People v Dockery,* 65 Mich App 600; 237 NW2d 575 (1975).

been the subject of an off-the-record discussion of Anderson's sentence.[13]

An objection to the contents of a presentence report cannot be voiced for the first time on appeal. As a precondition to seeking appellate relief in that regard, a defendant must file a motion in the trial court so that there is an opportunity to compile a record for appellate review concerning the subject matter.

WILLIAMS, C.J., and KAVANAGH, J., concurred with LEVIN, J.

---

[13] See *People v Pulley,* 411 Mich 523; 309 NW2d 170 (1981).