*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALEXANDER ACEVAL,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2025
8:48 AM

No. 367973
Wayne Circuit Court
LC No. 19-007452-01-FC

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant, Alexander Aceval, appeals as of right his July 5, 2023 conviction for conspiracy to deliver a controlled substance in an amount that exceeded 1,000 grams, MCL 333.7401(2)(a)(i). On appeal, Aceval argues that: (1) he was denied his right of confrontation and right to a fair trial when the trial court admitted evidence of a nontestifying confidential informant; (2) the trial court erred in admitting evidence obtained from an illegal traffic stop; and (3) that his conviction should be set aside under Michigan's no one-man conspiracy rule. As such, Aceval requests that this Court vacate his conspiracy conviction. We disagree with Aceval's arguments on appeal and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose when a tip from a confidential informant was received by Sergeant Ray Rollet with Wayne County's "Mobile Narcotics Enforcement Team" (MNET) to investigate Aceval for drug distribution. The ensuing investigation resulted in Aceval's arrest and conviction for delivery of a controlled substance (cocaine) in amounts that exceeded 1,000 grams.

In January 2019, Rollet received a call from a confidential informant who stated that Aceval was dealing cocaine and heroin in the greater Detroit area. Investigators ran Aceval's name in their database to confirm the identity, address, and phone numbers provided by the confidential informant. The results of this search further revealed Aceval's criminal history, showing that he had a prior conviction and served a prison sentence in 2005 or 2006 for delivery of a controlled substance over 1,000 grams. The searches showed that Aceval had extensive multi-state criminal history and uncovered that he was the target of a state/local narcotic investigation, including one

that occurred in 2002 by the Downriver Area Narcotics Organization. Investigators' searches verified Aceval's vehicle as a black Lincoln. In addition to the information regarding Aceval, the confidential informant disclosed the identity of another alleged drug distributor, Michael Camilleri. The confidential informant identified Camilleri by photograph and specified the car that he drove to transport drugs as a silver Lincoln. Upon searching Camilleri in the database, investigators confirmed he drove the silver Lincoln described by the confidential informant and that it was previously owned by Aceval. The confidential informant personally met with Detective Trooper Adam Diroff with the MNET, who found him to be credible and reliable.

Following receipt of these tips and confirming the information through the police database, Wayne County officers began their investigation of Aceval and Camilleri. Investigators began by obtaining a search warrant of Aceval's two phone numbers. In support of the search warrant, Diroff stated that investigators specifically received a tip from the confidential informant that Aceval, aged 50 to 60, was an active large-scale distributor of cocaine, lived in Detroit, and used two phone numbers primarily for drug trafficking.

The officers conducted a drive by at Aceval's address on February 5, 2019. Rollet observed a black Lincoln exiting Aceval's driveway. Rollett identified the driver as Aceval and followed the vehicle to a pharmacy parking lot. Rollet did not pull into the parking lot, however, as to not tip off Aceval that he was being followed. After passing by and circling back around to enter the parking lot, Rollet saw both Aceval and Camilleri exit the parking lot. Camilleri was driving the silver Lincoln that had been confirmed in the police database. Afterward, investigators were granted a search warrant to place a tracker on the silver Lincoln. They placed a tracker on Camilleri's car on February 14, 2019, and investigators continued to surveil the vehicle's whereabouts over the following weeks. Investigators decided against tracking Aceval's black Lincoln, out of fear that he would notice it and/or that the multiple cameras located outside of Aceval's home (there were at least 10) would record the tracker being placed. Aceval's doors were equipped with armor guard type storm doors and the property was surrounded by a tall privacy fence and tall tree-like bushes. According to investigators, these measures were consistent with houses used for illegal drug sales.

On the evening of February 25, 2019, Camilleri and Aceval were reported being with each other for several hours based on visual surveillance, phone pinging, and GPS tracking. Investigators observed Camilleri's vehicle parked in the back of a Mexican restaurant in Detroit for about 45 minutes and then saw Aceval and Camilleri entering the vehicle together before driving to a residence and back to Aceval's house, parking the vehicle in his garage. The confidential informant told investigators that, Camilleri is "likely Aceval's most involved associate for drug distribution," and that if Camilleri and Aceval pulled Camilleri's vehicle into Aceval's garage, "it is likely they did so to unload illegal narcotics." The confidential informant made this statement based on his prior dealings with Aceval. According to Diroff, Camilleri and Aceval's conduct and movements on this day were consistent with preparations to receive, package, and/or distribute large amounts of illegal narcotics.

During the daytime on February 27, 2019, Camilleri's silver Lincoln was tracked leaving Aceval's residence, driving to a strip mall in Taylor, then to Camilleri's residence, and then back to park at Aceval's. Later that night, the silver Lincoln began heading back to Taylor, and Rollet followed it. Rollet had called for backup to join him because investigators were anticipating a

drug deal happening at this time. The vehicle stopped briefly at Camilleri's and then headed to a "commercial area" where many semi-trucks owned by logistics businesses would park during the day. Aceval was observed driving the silver Lincoln and Camilleri was following directly behind him in a white pickup truck that was registered to Camilleri. After both vehicles left the commercial area and began driving northbound, officers initiated a traffic stop. Both vehicles stopped, and as officers approached the white pickup truck, they noticed in plain view in the back seat, two black duffle bags suspected to contain illegal drugs. Inside the duffle bags were 32 rectangular packages wrapped in thick black tape with red or green tape stripes in a manner consistent with narcotic smuggling and sale. Aceval and Camilleri were both taken into custody and the two duffle bags, which contained 35 kilos of cocaine, were seized. Each kilo carried a street value of $25,000 to $30,000, meaning the amount recovered totaled between $875,000 to more than one million dollars.

Aceval was thereafter charged with count 1, conspiring to commit delivery of more than 1,000 grams or more of cocaine and count 2, possession with intent to deliver 1,000 or more grams of cocaine. Camilleri was charged with the exact same offenses as Aceval: conspiring to commit delivery of more than 1,000 grams or more of cocaine and possession with intent to deliver a thousand or more grams of cocaine. Due to health concerns, Camilleri decided to accept a plea deal in exchange for a shorter sentence (pleading guilty to attempt to deliver cocaine) and agreed to testify against Aceval. At trial, Camilleri testified as to his relationship with Aceval and detailed the drug transportation work they did together. Camilleri provided testimony on how he and Aceval first met, information on previous instances of drug distribution they completed together, and confirmed the details of the instant transaction for the jury as outlined above.

At the close of trial, on July 5, 2023, Aceval was found guilty on count 1, conspiracy. The jury hung on the second count. The prosecution dismissed the second count for delivery at sentencing. On August 10, 2023, the court sentenced Aceval to 40 to 60 years in prison. This appeal followed.

## II. ANALYSIS

### A. ACEVAL'S RIGHT OF CONFRONTATION AND RIGHT TO A FAIR TRIAL

#### 1. ISSUE PRESERVATION AND STANDARD OF REVIEW

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (citation omitted). Aceval made no objection at trial regarding any violation of his right to confrontation or right to a fair trial. Therefore, the issues are unpreserved. Unpreserved error is reviewed on appeal for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). This requires the defendant to show that the plain error affected the outcome of the proceedings. *Id.* Reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

## 2. ACEVAL FAILS TO ESTABLISH ANY VIOLATION OF HIS RIGHT OF CONFRONTATION OR RIGHT TO A FAIR TRIAL WHERE TESTIMONY WAS PROPERLY ADMITTED BY A NONTESTIFYING CONFIDENTIAL INFORMANT

"A defendant has a right to be confronted with the witnesses against him or her." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007), citing US Const, Am VI; Const 1963, art I, § 20; *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). As a result, out-of-court testimonial statements are inadmissible at trial. *Id*. MRE 801; MRE 802. Nontestimonial statements, however, and those where the declarant is unavailable for trial and the defendant had a prior opportunity for cross-examination, are generally admissible. *Chambers*, 277 Mich App at 10; MRE 801; MRE 804(a), (b)(1). A nontestimonial statement, not offered for the truth of the matter asserted but instead to show why police officers took certain actions, is admissible. *Chambers*, 277 Mich App at 10-11.

The confidential informant's "tips" were not testimonial in nature and thus, no confrontation clause issues arise. Rather, the confidential informant provided identifying information of Aceval, and officers conducted their own investigation to confirm information that was provided. At trial, while it seems clear that the confidential informant offered some additional information beyond Aceval's name and identifying information (for example, that a massive drug shipment was forthcoming), the prosecution and defense on direct and cross examination failed to indicate what additional information was gathered. Rollet testified about the investigation, including efforts to verify the tips, and explained why and how law enforcement began to survey Aceval. He did not offer the information gathered by the confidential informant to prove the truth of the matter being asserted; he only offered the information to show the effect of the information on the investigation.

To obtain relief for this unpreserved claim of error, Aceval carries the burden to prove "that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. Aceval does not articulate how the outcome of the trial would have been different if the claimed erroneous testimony had been excluded or if defense counsel would have been allowed to cross-examine the confidential informant. That is particularly difficult where, as here, Aceval's co-defendant and key partner in his drug operation testified against him. Because Aceval fails to establish error or that the outcome of the trial would have been different without the tip information, he is not entitled to relief.

## B. LEGALITY OF THE TRAFFIC STOP

### 1. ISSUE PRESERVATION AND STANDARD OF REVIEW

For a preserved denial of a motion to suppress, the Court reviews the trial court's findings of fact for clear error. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009). A trial court clearly errs "when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Buie*, 491 Mich 294, 315-316; 817 NW2d 33 (2012) (citation omitted). But the ultimate determination of whether the Fourth Amendment was violated and whether to apply the exclusionary rule, is de novo. *Hyde*, 285 Mich App at 438. De novo review is an independent review without deference of the trial court's determination. *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

Prior to trial, Aceval filed a motion to suppress the evidence obtained from an investigative stop based on a violation of the Fourth Amendment and article 1, section 11 of the Michigan Constitution. US Const, Am IV; Const 1963, art I, § 11. The motion was denied by the trial court in a written order finding facts supporting the legality of the investigative stop. At trial, Aceval again objected to admission of the evidence seized, arguing the stop was unlawful. In this appeal, Aceval again asserts his claim that the officers lacked sufficient probable cause to warrant the investigative stop. This claim is preserved for appellate review.

## 2. ACEVAL ABANDONED HIS CLAIM THAT THE TRAFFIC STOP WAS UNLAWFUL

Here, without articulating how the trial court erred in its analysis and findings of fact to deny his motion to suppress the duffle bags of cocaine, Aceval asserts that "[t]here was no evidence that any officer involved in the stop had probable cause to stop the vehicles and therefore any evidence seized as a result of the stop should have been suppressed." Since Aceval fails to articulate how the trial court erred in its ruling beyond this blanket assertion, he has abandoned the issue and is not entitled to relief. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to the Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

## C. MICHIGAN'S NO ONE-MAN CONSPIRACY RULE

### 1. ISSUE PRESERVATION AND STANDARD OF REVIEW

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Anderson*, 341 Mich App at 279. Aceval did not raise his claim of error regarding the application of the "no one-man conspiracy" rule before the trial court. Therefore, the issue is unpreserved. Unpreserved error is reviewed on appeal for plain error which affects the defendant's substantial rights. *Carines*, 460 Mich at 763-764. This requires the defendant to show that the plain error affected the outcome of the proceedings. *Id.* Reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

### 2. MICHIGAN'S NO-ONE MAN CONSPIRACY RULE IS INAPPLICABLE WHERE ACEVAL AND HIS COCONSPIRATOR WERE NOT TRIED TOGETHER

Under common law, when coconspirators were tried together, "a verdict finding one guilty and the other not guilty require[d] a judgment of acquittal of both." *People v Anderson*, 418 Mich 31, 36; 340 NW2d 634 (1983), quoting Perkins, Criminal Law (2d ed), p 622. This rule does not apply when: coconspirators are tried separately (*id*., at 38); coconspirators are tried together, but with separate juries (*People v Jemison*, 187 Mich App 90, 93; 466 NW2d 378 (1991)); there is sufficient evidence to support a conspiracy conviction despite the coconspirator's charge being dismissed for a guilty plea to a different offense (*People v Turner* (On Remand), 100 Mich App 214, 217; 299 NW2d 721 (1980)); or when a coconspirator is granted immunity in exchange for testimony against the defendant (*People v Berry*, 84 Mich App 604, 607; 269 NW2d 694 (1978)).

Since a conspiracy requires an agreement between at least two people, if coconspirators are tried jointly and one person was acquitted while the other was found guilty by the same jury,

both must be acquitted. *Anderson*, 418 Mich at 36. This rule was developed to address the inconsistency of the verdicts. *Id*. But the modern view is that "juries are not held to any rules of logic nor are they required to explain their decisions." *People v Montague*, 338 Mich App 29, 51; 979 NW2d 406 (2021).

Aceval is not entitled to relief under the common law rule because he and his coconspirator were not tried together, and Camilleri received a plea-agreement to avoid being convicted of the conspiracy charge. *Anderson*, 418 Mich at 38; *Turner*, 100 Mich App at 217. Further, the resolution of a case through a plea agreement is not inconsistent with that defendant's guilt of the conspiracy. Because Camilleri pled guilty based on a plea agreement to avoid conviction for the conspiracy, he was not acquitted of the crime by a jury and the jury's finding of guilt is not inconsistent and "inherently defective." Rather, the jury was provided with Camilleri's plea agreement, along with a disclosure that Camilleri was motivated to make the agreement due to his cancer diagnosis and his desire to obtain a bond to receive medical treatment.

The jury was properly informed that Camilleri's conspiracy charge was dismissed as part of a plea agreement that included his testimony against Aceval and not because of his innocence of the charge. Aceval is not entitled to relief.

## III. CONCLUSION

We find no plain error occurred when the trial court properly admitted evidence of nontestimonial information by the confidential informant through Rollet's testimony. Moreover, the trial court did not commit plain error in entering a guilty verdict for Aceval's conspiracy charge where Aceval was not jointly tried with Camilleri and Camilleri agreed to plead guilty and testify against Aceval in exchange for a lesser sentence.

Affirmed.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle