PEOPLE v ALLEN

1. CRIMINAL LAW—NEW TRIAL—EVIDENCE—POLYGRAPH TESTS.

The results of lie detector tests or reference to them are inadmissible at trial, and where it was not clear from the record below whether a trial judge considered polygraph test results in denying a motion for a new trial, but his awareness of such results at sentencing suggests he might have, the case was remanded for a rehearing of defendant's motion for a new trial before a different trial judge.

2. CRIMINAL LAW—SENTENCING—PRESENTENCE REPORT—POLYGRAPH TESTS.

Polygraph test results must be excluded from presentence reports unless a defendant consents to have such results placed in his report.

3. CRIMINAL LAW—SENTENCING—POLYGRAPH TESTS.

A trial judge's asking a defendant during sentencing if he was willing to take a polygraph test required resentencing before a different judge.

Appeal from Lenawee, Rex B. Martin, J. Submitted Division 2 June 7, 1973, at Lansing. (Docket No. 15210). Decided August 29, 1973.

Louis Allen was convicted of breaking and entering and armed robbery. Defendant appeals. Remanded for further proceedings with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey A. Koselka,* Prosecuting Attorney, for the people.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur 2d, New Trial § 216.
[2, 3] 21 Am Jur 2d, Criminal Law § 303.

*Nathan T. Fairchild,* for defendant on appeal.

Before: HOLBROOK, P. J., and DANHOF and AD-AMS,* JJ.

HOLBROOK, P. J. On January 12, 1972, defendant was convicted by a jury of breaking and entering a house trailer with intent to commit larceny, MCLA 750.110; MSA 28.305, and armed robbery, MCLA 750.529; MSA 28.797. On February 8, 1972, he was sentenced to prison for a period of 5 to 10 years on the breaking and entering charge and a period of 10 to 40 years on the armed robbery charge.

At the sentencing the defendant vehemently asserted his innocence and in response the trial court stated:

*"The Court:* Well, part of our problem, Louis, is that the jury heard the testimony, and the jury found you guilty—

*"Defendant:* But the—

*"The Court:* —frankly, and Mr. Elmore went up and took a polygraph test and he stated in the polygraph test you were the one that went in the trailer, and you were the one that went in and beat up the old man and the polygraph operator said he's telling the truth.

*"Defendant:* That's the polygraph operator. That man ain't—if I come in with a pistol, Judge, and beat you up, you wouldn't mistake me for that man. * * *

"—or nothing. Now, you done told me that this Bob Elmore took a polygraph test, and they—and you all going by this polygraph test.

*"The Court:* I'm not going by the polygraph test.

*"Defendant:* Could you please tell me what kind of— what evidence do—can you all show me what you all sending me to the penitentiary on?

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"*The Court:* Well, what you are being sentenced on, Louis, is the—

"*Defendant:* Anything—

"*The Court:* —verdict of the jury.

"*Defendant:* The verdict of the jury?

"*The Court:* That's right. Now—

"*Defendant:* Because Linda Sue is white. I'm a black man. That's why they took her word. How can they take her word more better than mine and the woman be arrested for perjury in the courtroom, but my word is still not as good as hers? How—what else can it be, man, but a—

"*The Court:* Well—

"*Defendant:* Can't be right. * * *

"*The Court:* Louis, let me ask you this question, and this is something the court's got no business asking you. Are you willing to take a polygraph test?

"*Defendant:* For what?

"*The Court:* All right, I just asked.

"*Defendant:* Well, will it be—it help me?

"*The Court:* You just answer the question yes or no.

"*Defendant:* Tell me how it can help me.

"*The Court:* You just answer the question yes or no.

"*Defendant:* No, I ain't taking nothin'."

A motion for a new trial was placed on file before the sentencing, but apparently because the defendant wanted a new attorney it was not heard. On October 30, 1972, a hearing was held on defendant's renewed motion for a new trial and resentencing. A motion was also made that a judge other than the trial judge hear the motions, because the trial judge was prejudiced by his knowledge of Robert Elmore's polygraph test. All motions were denied. Defendant now appeals.

It has been a longstanding unequivocal rule in this state that the results of lie detector tests or reference to them are inadmissible at trial. *People v Frechette,* 380 Mich 64; 155 NW2d 830 (1968);

*People v Becker,* 300 Mich 562; 2 NW2d 503 (1942); *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969). In *People v Sinclair,* 21 Mich App 255; 175 NW2d 893 (1970), this Court found it error for the lower court to discuss the results of a lie detector test of the alleged guilty party at a hearing on the defendant's motion for a new trial. In defendant's case here it is not clear from the record below whether the trial court considered the polygraph test results in denying the motions for a new trial, but his awareness of them from the sentencing certainly suggests he might have. We must, therefore, remand this case for a rehearing of defendant's motion for a new trial before a different trial judge. We believe *Sinclair, supra,* provides us with no other realistic alternative.

As for the propriety of another person's, in this case defendant's alleged accomplice's, lie detector test becoming part of defendant's presentence report, the issue is apparently a novel one in this jurisdiction. The statute authorizing the taking of presentence reports states that the probation officer shall only inquire into the "antecedents, character and circumstances of such person or persons". MCLA 771.14; MSA 28.1144. As was held in *People v Malkowski,* 385 Mich 244, 249; 188 NW2d 559, 562 (1971), "It is vitally important to the defendant and to the ends of justice that the sentence be based upon *accurate* information". (Emphasis supplied.) If polygraph test results are such unreliable indicators of veracity that they must be excluded as evidence in trials and in hearings on motions for new trials, they must be similarly excluded from presentence reports unless the defendant consents to have such test results placed in his report. The sentencing of a defendant is one of the most critical stages in the criminal

process in terms of the practical impact on a defendant's life. While it may be necessary for presentence reports to be based in part on opinions and other less than *completely* reliable information in order to ascertain a defendant's true character, where acknowledged *unreliable* pieces of information can be identified, they should be excluded. *Cf. People v Edgett,* 39 Mich App 392; 197 NW2d 525 (1972). Until polygraph tests become scientifically more reliable they must not become a part of a defendant's presentence report unless he consents to their inclusion. While there is nothing in the record to clearly indicate that the defendant's sentence was based on the trial judge's belief in Elmore's polygraph test results, we cannot help but wonder what effect the judge's knowledge of the test results had on defendant's sentence. Moreover, it was clearly improper, as the trial judge himself in his statement quoted above recognized, to ask the defendant if he were willing to take a polygraph test. Such a question would not be proper at trial, and we cannot see how it could be relevant after a defendant's conviction. We hold that this questioning by the trial judge during defendant's sentencing requires resentencing now before a different judge. Resentencing depends, of course, on the results of defendant's hearing on his motion for a new trial.

Because of our disposition of this case, we need not discuss the other issues defendant raises on appeal. Remanded for proceedings consistent with this opinion. We do not reserve further jurisdiction.

All concurred.