*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ABIGAIL RAE SPRINGS,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 344563
Shiawassee Circuit Court
LC No. 2017-009479-FC

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted the sentence for her plea-based conviction of first-degree child abuse, MCL 750.136b(2). Defendant was sentenced to 15 to 50 years' imprisonment. The 15-year minimum sentence represented the very top end of the guidelines range. The issue on appeal is whether defendant is entitled to resentencing because the prosecutor introduced evidence at sentencing that defendant had taken and failed a polygraph examination, and, if so, whether a different judge must impose sentence. Defendant does not challenge her conviction. We affirm the sentence.

Defendant was charged with one count of first-degree child abuse and, in the alternative, a single count of second-degree child abuse, MCL 750.136b(3), with respect to injuries sustained by her daughter, NS, who was about two-years old at the time. Defendant subsequently pleaded guilty to first-degree child abuse. The plea included an agreement that "the resulting sentence would be within the guideline range." Defendant acknowledged that the prosecution had roughly calculated the guidelines range to be 81 to 135 months' imprisonment. But she noted her understanding that the trial court would ultimately be the arbiter in setting the actual minimum sentence range and that it might differ from the prosecutor's calculation.

At the plea hearing, defendant testified for the purpose of establishing the factual basis for her plea. Defendant asserted that she found significant bruises all over NS's buttocks that had been inflicted by her boyfriend Derrick Mason III. Defendant conceded that she did not seek medical attention for NS's bruises. Instead, defendant confirmed that she agreed to and

-1-

participated in Mason's plan to soak the bruised area in boiling hot water in an attempt to hide the bruises, knowing full well that the scalding water would cause further serious injury to NS. Defendant acknowledged that she failed to protect NS and failed to seek immediate medical attention for NS's burn injuries. In response to questioning from the trial court, defendant admitted that she was involved in either knowingly or intentionally causing burns to the child.

The presentence investigation report (PSIR) revealed additional information regarding past and present abuse of NS. The PSIR indicated that an investigation showed that NS had suffered bruising on her back and thighs, a lacerated liver, femur and pelvis fractures, a possible spleen injury, a broken arm, a subdural hemorrhage, a cut to her head, and a perforated stomach, which caused her to become septic. Some of her injuries were consistent with Shaken Baby Syndrome. NS weighed 14 pounds, and an emergency room physician stated that NS was "starved, iron-deficient, [and] protein calorie malnourished." The doctor opined that NS "was obviously severely physically abused and brutalized and because of the extent of the injuries, may have been tortured." Defendant gave the police inconsistent, dubious, and evolving accounts of how NS was injured. Defendant provided innocent explanations for some of NS's injuries or blamed them on Mason.

Attached to a sentencing memorandum prepared by the prosecution for the court to review was a copy of a report prepared by Detective Sargent Robert Scott of the Michigan State Police, who had conducted a polygraph examination of defendant. As part of the examination, Scott asked defendant whether she had caused any of the physical injuries suffered by NS, and defendant denied doing so. On the basis of his interpretation of the polygraph test, Scott opined that defendant was not being truthful. Scott's report also summarized statements about NS's injuries made by defendant after the polygraph examination was concluded. Those statements were consistent with defendant's guilty plea; however, there was additional information, including defendant's admissions that she and Mason had tied NS to a bed to keep her from touching her burns and that they had pulled back and forth on NS, possibly shaking her, in an effort to put NS's hip and arm "back into place." The report also indicated that defendant had signed a written statement, which was also attached to the prosecutor's sentencing memorandum, and which consisted of numerous admissions made by defendant concerning NS's injuries.

The PSIR contained a summary of defendant's statements, indicating in part that defendant had "admitted spanking [NS] on the buttocks [on] several occasions and spanking her hard enough one time to cause a bruise." At the sentencing hearing, defendant, through counsel, asked the court to strike that part of the sentence in the PSIR reflecting that bruising had resulted from a spanking. In response, the prosecutor argued that the full statement, including the sentence in dispute, was "part of the police report" and was recorded and "made to the polygrapher." The trial court ruled that the statement "will stand as reported," and it was left in the PSIR. Although the results of the polygraph examination were presented to the trial court, the prosecutor did not discuss the results in the sentencing memorandum, nor did the prosecution mention the results of the examination at sentencing. The prosecutor did, however, reference in the memorandum and at sentencing the post-examination admissions and statements made by defendant to Scott.

At the sentencing hearing, the trial court addressed and decided various challenges to the scoring of the guidelines. The minimum sentence guidelines range was set at 108 to 180 months (9 to 15 years). The trial court stated that it would abide by the parties' sentencing agreement and sentence defendant within the guidelines range. Defendant argued for a sentence at the low end of the guideline range, maintaining that Mason was primarily responsible for the child abuse and that defendant had also been abused by Mason. The prosecutor countered that defendant was untruthful, that she would say whatever was necessary to avoid responsibility, that she could have sought help for and protected NS, and that the child's injuries were horrific. The prosecution requested a sentence at the high end of the guidelines range.

The trial court recited the extensive injuries suffered by NS. The court explained that "[t]his would be the most horrific and savage case of child abuse that this [c]ourt has ever seen; what keeps this case from being the worst, however, is that [NS] is alive and that she's recovering." And in response to defendant's argument that she was not fully to blame for those injuries, the trial court stated that defendant was responsible for the child and failed to protect her. Accordingly, the court stated that it would sentence defendant "to the maximum possible sentence" permitted by the plea and sentencing agreement. The trial court imposed a term of imprisonment of 15 to 50 years.

Subsequently, defendant filed a motion to withdraw her plea or to correct an invalid sentence. The motion was denied in full in a written opinion and order. Pertinent to our analysis, defendant argued in the motion that she was entitled to resentencing, and resentencing by a different judge, because the prosecution improperly exposed the trial court to polygraph-examination evidence. The trial court denied the request for resentencing, explaining that "any reference to the polygrapher's report was passing and not dispositive." The trial court also indicated that it had conducted its own review of the guidelines and performed its own legal research before the sentencing hearing and that it had made clear at the hearing the basis for each and every ruling on the guidelines and for the imposed sentence. Defendant's delayed application for leave to appeal was granted by this Court. *People v Springs*, unpublished order of the Court of Appeals, entered August 24, 2018 (Docket No. 344563). The panel limited the appeal to the following issue: "Whether defendant is entitled to resentencing before another judge because the prosecutor improperly exposed the sentencing judge to polygraph information prior to sentencing[.]" *Id.*[1]

---

[1] We note that the motion panel's language is a bit ambiguous because it could be construed as ordering resentencing but leaving open the issue whether the resentencing must take place before a different judge. We, however, believe that the panel's intent was for our case call panel to address both whether there should be resentencing and, if resentencing is ordered, whether a different judge should impose sentence. We additionally note that issues raised in defendant's post-judgment motion and delayed application for leave regarding withdrawal of the plea and challenges to the scoring variables are outside the scope of the grant of leave to appeal.

This Court reviews de novo legal questions, and related factual findings are reviewed for clear error. *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018). "It is true that, generally, a court may neither solicit nor consider polygraph-examination results for sentencing, *People v Towns*, 69 Mich App 475, 478; 245 NW2d 97 (1976), and the consideration of polygraph-examination results is generally considered error that requires resentencing, *People v Allen*, 49 Mich App 148, 151-152; 211 NW2d 533 (1973)." *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009). Here, the trial court did not solicit polygraph-examination results. There is no indication in the record that the court played any role in defendant taking the polygraph examination. Moreover, the record reflected that the trial court did not mention or consider the results of defendant's polygraph examination in addressing the sentencing variables and in imposing sentence. And in ruling on the post-judgment motion, the trial court stated that the polygraph-examination results were not pertinent to its sentencing decisions, i.e., the results were not dispositive. The trial court properly relied on information and evidence in the PSIR, as well as defendant's testimony at the plea hearing, in assessing the scoring variables and imposing sentence. See *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (for purposes of sentencing, "a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination").[2]

Defendant argues that because she did not introduce or offer the results of the polygraph examination at sentencing, because a sentencing court sits as a factfinder for purposes of sentencing, which is a final matter, and because defendant had a due process right to be sentenced solely on accurate and reliable evidence, resentencing is required where the trial court was exposed to the results of the polygraph examination. In other words, according to defendant, resentencing is required if the polygraph examination results are merely revealed to the sentencing court, even if not taken into consideration or deemed relevant by the court in sentencing a defendant. In this case, the results of the polygraph examination were attached to the prosecutor's sentencing memorandum, and we will presume that the trial court reviewed and was aware of the results.[3] Also, the prosecutor referenced the "polygrapher" at the sentencing hearing, thereby effectively informing the trial court that a polygraph examination had been conducted.

In support of her position, defendant cites this Court's opinion in *People v Newsum*, 105 Mich App 755; 307 NW2d 412 (1981). The Court stated and held as follows:

---

[2] The prosecutor's reference at sentencing to statements defendant made to the polygraph examiner and the trial court's decision not to make a deletion to the PSIR as requested did not entail or concern the results of the polygraph examination. Also, the prosecutor at one point mentioned defendant being untruthful and that she would say whatever was necessary to avoid responsibility. This argument was not necessarily based on the polygraph-examination results, considering that defendant's explanations for NS's injuries were continually changing and were inconsistent with the physical injuries, thereby suggesting deceit and untruthfulness.

[3] The trial court noted that it had reviewed everything submitted by the parties.

In this case, defendant claims that the only reason he admitted to knowledge of and/or participation in approximately 100 larcenies and 20 B & Es during the course of a polygraph examination was that he was assured by the officer administering the examination that those admissions were confidential and would not be made available to the sentencing judge. The officer who gave the examination did not recall making any assurances to that effect and stated that he would not have done so in any event.

On the basis of what is before us, we conclude that defendant is entitled to be resentenced before another judge and that a new presentence report is to be prepared, which report shall not contain any reference to defendant's admissions regarding involvement in numerous larcenies and breakings and enterings made during the polygraph examination. We cannot say that defendant voluntarily and without inducement or assurances and with full awareness of the consequences, admitted to committing these crimes. [*Id.* at 759-760.]

As reflected in this passage, *Newsum* is entirely distinguishable from the circumstances presented in the instant case. There is no evidence suggesting that defendant's statements and admissions made to Detective Sargent Scott were involuntary or made with inducements or assurances.

We also find *Allen* easily distinguishable, considering that it involved a defendant who claimed innocence at his sentencing, that the sentencing court referred to the results of a polygraph examination of an accomplice who was found to be truthful in implicating the defendant in the charged crimes, and that the sentencing court asked the defendant if he would be willing to take a polygraph examination. *Allen*, 49 Mich App at 149-150. The decision in *Allen* to order resentencing has no application to the circumstances presented in this case.

Defendant also cites *People v Liddell*, 63 Mich App 491, 493; 234 NW2d 669 (1975), in which the polygraph examiner testified at a criminal competency hearing that "the defendant made a truthful, affirmative response to the question of whether he had lied to the judge as to his memory loss." This Court ruled:

Michigan courts have a consistent history of ruling polygraph examinations and opinion testimony based thereon to be inadmissible evidence. In addition to criminal trials, polygraph evidence has been ruled inadmissible in presentence reports, consideration for a motion for a new trial, during sentencing proceedings and in civil and administrative proceedings. Considering the statements and preparations by the trial court prior to his order for the defendant to submit to the examination, and considering the inculpatory results of the test, we cannot say that the consideration of the polygraph testimony constituted harmless error.

Polygraph evidence has been held to be erroneous in numerous situations in both civil and criminal cases. It would thus be anomalous for us to endorse its use in the context of a competency hearing. Consequently, we conclude that error

was committed in admitting polygraph evidence at a hearing to determine if the defendant was competent to stand trial. [*Id.* at 494-495 (citations omitted).]

We have no dispute with the proposition that the prosecution improperly attached the results of the polygraph examination to its sentencing memorandum.[4] But the results were not admitted into evidence or considered by the trial court at sentencing, nor did the court find them dispositive when the results were called to the court's attention in defendant's post-judgment motion.

Assuming that mere exposure to the results of a polygraph examination creates an unacceptable atmosphere or environment that generally requires resentencing, we cannot conclude that resentencing is necessary under the particular facts of this case. Defendant pleaded guilty to first-degree child abuse, and "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." MCL 750.136b(2); see also *People v Elder*, 104 Mich App 651, 654; 305 NW2d 563 (1981).[5] And, aside from the plea hearing, defendant admitted in statements to assisting Mason in tying NS to her bed, pulling her back and forth, and trying to put NS's "arm and hip back into place." Moreover, at the sentencing hearing, the trial court acknowledged defendant's claims that Mason was the abuser, but the court responded that the abuse "happened on [defendant's] watch" and that her "failure to protect [her] child" caused the court "great concern." The court *did not* respond by citing Scott's opinion that defendant had lied during the polygraph examination when asked whether she physically caused NS's injuries. The trial court's decision to sentence defendant at the top end of the guidelines range was primarily because defendant failed to protect her child from what can only be characterized as horrific and sustained abuse. In sum,

---

[4] We do note that, except with respect to privileges, the Michigan Rules of Evidence do not apply to sentencing hearings. MRE 1101(b)(3).

[5] The *Elder* panel held:

> This situation is distinguishable from the cases cited by defendant in which the sentencing court improperly relied upon knowledge of a polygraph examination which implicated the defendant in criminal activity other than that to which the defendant had pled guilty or for which he was on trial. In the instant case, the mention of the polygraph examination was only in regard to the current charge to which the defendant *had already pled guilty*. No error occurred. [*Elder*, 104 Mich App at 654 (emphasis added).]

resentencing is not necessary because the court's exposure to the polygraph-examination results was of no consequence and plainly harmless.  See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).[6]

We affirm.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford

---

[6] Defendant's associated claim of ineffective assistance of counsel falls outside the scope of the order granting leave to appeal.