*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTIAN LEE MITCHELL,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2024

No. 364165
Oceana Circuit Court
LC No. 2022-015238-FH

Before: BOONSTRA P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration by means of force or coercion). The trial court sentenced defendant to 10 to 15 years in prison for his CSC-III conviction. Defendant now argues on appeal that (1) he was denied his constitutional right to effective assistance of counsel when defense counsel failed to impeach the nurse practitioner witness or to object to the nurse practitioner's testimony; (2) he was denied his right to a fair trial because the prosecution misstated facts during the trial and defense counsel failed to object; (3) the trial court was improperly exposed to polygraph information in the presentence investigation report (PSIR) before it sentenced him, and defense counsel failed to object and request that the information be stricken; and (4) he is entitled to resentencing because the trial court violated his due-process rights by improperly assigning him points under offense variable (OV) 1 and OV 10. We affirm defendant's conviction and sentence but remand to allow the trial court to remove the improper information from the PSIR.

## I. BASIC FACTS

This case arose from an incident when defendant sexually assaulted the victim. Just before the assault, the victim drove defendant, with whom she had had a previous dating relationship, to a park. Defendant had a pocketknife in his possession. An argument subsequently ensued, and defendant accused the victim of sleeping with someone else. Defendant pulled the victim's hair, coerced her into the backseat of the vehicle, and forcibly engaged in oral, vaginal, and anal sex. The victim stated that she felt a hard object pressed against her back during the assault, presumably

the pocketknife. After the assault, the victim drove back to her house without defendant and reported the assault to the police. Police located defendant's pocketknife on the back seat of the victim's vehicle. Police officers subsequently arrested defendant, and the prosecution charged him with one count of CSC-III.

During a pretrial conference, the trial court informed defendant of his right to engage in a polygraph examination, and defense counsel confirmed that defendant preferred to exercise his right to a polygraph examination. The parties then engaged in a two-day jury trial, and the jury found defendant guilty of one count of CSC-III. On the basis of defendant's prior criminal history and the victim's testimony, the trial court sentenced defendant to 10 to 15 years in prison.

Defendant now appeals.

## II. INEFFECTIVE ASSISTANCE

Defendant first argues that defense counsel was ineffective for several reasons, each of which will be addressed in turn.

Ineffective assistance of counsel is a mixed issue of fact and constitutional law. *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011). As a rule, we review a trial court's findings of fact for clear error and review de novo questions of law. *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014). When the trial court has not conducted a hearing to determine whether defense counsel was ineffective at trial, our review is limited to mistakes apparent on the record. *Id*. at 68.[1]

The United States Supreme Court has stated that, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (quotation marks and citation omitted). The United States Supreme Court has stated that the right to assistance of counsel for defense is "fundamental to our system of justice [and] is meant to assure fairness in the adversary criminal process." *United States v Morrison*, 449 US 361, 364; 101 S Ct 665; 66 L Ed 2d 564 (1981) (quotation marks and citation omitted). The Michigan Supreme Court has likewise stated, "There is no question that a criminal defendant has a state and federal constitutional right to present a defense." *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984).

This Court has stated that, "[t]o establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *Jackson*, 292 Mich App at 600-601.

---

[1] Defendant filed a motion to remand with this Court requesting, in part, the opportunity to conduct a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). That motion was denied. *People v Mitchell*, unpublished order of the Court of Appeals, entered June 13, 2023 (Docket No. 364165).

Effective assistance of counsel is strongly presumed, and the party claiming ineffectiveness must overcome this presumption. *People v Horn*, 279 Mich App 31, 48 n 2; 755 NW2d 212 (2008). The United States Supreme Court has stated that, when examining the effectiveness of counsel, reviewing courts must apply "a heavy measure of deference to counsel's judgments." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

## A. CONTRADICTORY TESTIMONY

Defendant argues that the details of defendant's abuse against the victim contradict the victim's preliminary examination and trial testimonies, indicating that the sexual abuse nurse examiner (SANE) who examined the victim and testified about her examination at trial was merely offering her own interpretation of what happened. We disagree.

Given that defendant was not present when the victim told the nurse what happened during the abuse, defendant's assertion appears to be nothing more than *his* own interpretation of the nurse's testimony. Although certain deviations existed among the victim's various accounts of the sexual assault, these deviations were relatively minor. Additionally, the facts indicate that defense counsel's failure to object was part of a deliberate strategy to cast the victim's credibility into doubt. Such a strategy is permissible under MRE 607, which states that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Although defendant's strategy of allowing the jury to hear the inconsistencies in the accounts of the abuse ultimately failed, a failed strategy does not constitute a deficient performance on the part of trial counsel. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

## B. HEARSAY TESTIMONY

Defendant also argues that the nurse's testimony constituted inadmissible hearsay evidence. We disagree.

MRE 801(c) defines hearsay as a statement "other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[2] The nurse's testimony, which included a detailed summary of defendant's abuse of the victim, as told to the nurse by the victim, clearly fits the statutory definition of hearsay. Nevertheless, the nurse's testimony was admissible as a statement of excited utterance, see MRE 803(2), and as a statement made for purposes of medical treatment or diagnosis, see MRE 803(4).

MRE 803(2) covers a hearsay statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." An excited utterance "must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion." *People v Gee*, 406 Mich 279, 283; 278 NW2d 304 (1979). The nurse's statement arose out of defendant's sexual abuse of the victim and related to the

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). This opinion relies on the version of the rules in effect at the time of trial.

circumstances and details of the abuse.  Therefore, the remaining question is whether enough time had passed between the victim's statement to the nurse and the abuse had passed for the victim to contrive and misrepresent.

In *People v Smith*, 456 Mich 543, 545; 581 NW2d 654 (1998), the Michigan Supreme Court concluded that a hearsay statement made approximately 10 hours after an event may be properly admitted at trial as an excited utterance.  In *Smith*, 456 Mich at 547, the defendant told the victim, a 16-year-old high school student, that the defendant would not allow the victim to leave the defendant's house and offered to involve the victim in a business venture if the victim would allow the defendant "to perform fellatio on him."  The defendant then made threats regarding the victim's mother, hit the victim in the chest and leg, and made various other threats before performing fellatio on the victim.  *Id*. at 547, 548.  The defendant drove the victim home at about 1:45 a.m., the victim showered for an hour, paced the floor and eventually fell asleep until 11:00 a.m.  *Id*. at 548, 549.  At about that time, the victim started crying, and his mother asked him why he was upset.  *Id*. at 549.  The victim's mother testified at trial that the victim said, "Oh, mom, I had to be sucked off last night before I can [sic] even come home."  *Id*. (quotation marks omitted).  The Michigan Supreme Court stated that there was no evidence that the stress arising from the sexual assault had abated, nor was there evidence that the accuracy of the victim's confession was undermined by his parents' inquiries.  *Id*. at 553, 554.  Therefore, the trial court did not abuse its discretion by admitting the mother's statement as an excited utterance.  *Id*. at 554.

In this case, the time span between the sexual assault and the victim's examination with the nurse at the hospital was relatively short; a few hours elapsed from the assault to meeting with the SANE.  See *Smith*, 456 Mich at 545.  More importantly, the nurse affirmed that, during the examination, the victim appeared extremely traumatized, she was visibly shaking, she was "crying intermittently back and forth," and appeared very upset.  This indicates that the victim's stress arising from the sexual assault had not abated.  See *id*. at 553, 554.  According to the police officers' testimony, the victim's trauma persisted from the time they arrived at the victim's house shortly after the abuse to the time of the nurse's examination. For these reasons, the victim's statement to the nurse was admissible at trial as a statement of excited utterance.

Moreover, portions of the victim's statement was also admissible as a statement made for purposes of medical treatment or diagnosis. MRE 803(4) covers "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."  The justification underlying MRE 803(4) is the existence of "(1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care." *People v Garland*, 286 Mich App 1, 8-9; 777 NW2d 732 (2009).

In *Garland*, 286 Mich App at 3, the defendant sexually molested the victim and was charged with CSC. On the same morning of the assault, the victim was examined by a nurse who also took the victim's medical history.  *Id*. at 9.  The nurse subsequently testified at the trial.  *Id*. This Court concluded that "the victim had a self-interested motivation to speak the truth to the nurse in order to obtain medical treatment."  *Id*.  Moreover, the victim was over the age of 10, and, accordingly, "there was a rebuttable presumption that she understood the need to tell the truth to

the nurse." *Id*. The fact that the victim did not have any immediately apparent injuries did not rebut this presumption. *Id*. This Court noted that the presence of sexually transmitted diseases is often impossible to detect without additional diagnosis. *Id*. at 9, 10.

In this case, like the nurse in *Garland*, the nurse examined the victim on the same day of the sexual assault. See *id*. at 9. Unlike the *Garland* victim, the present victim had physical injuries on her body, although the nurse could not conclusively determine that sexual abuse had occurred on the basis of these injuries. Even so, the nurse clarified that her purpose was not to determine whether sexual abuse occurred, but merely to record the victim's words and collect evidence on the basis of the victim's story which is exactly what she did. Lastly, like the *Garland* victim, the present victim was well over the age of 10, indicating that she presumably understood the need to tell the nurse the truth. See *id*.

For these reasons, the nurse's testimony regarding the victim's account of the abuse constituted a statement of medical diagnosis or treatment and was admissible at trial. Consequently, any objection raised by defense counsel would have been futile and would not have altered the trial's outcome. See *People v Shaw*, 315 Mich App 668, 674; 892 NW2d 15 (2016). Likewise, for reasons already stated, defendant has failed to establish that impeaching the victim's testimony would have resulted in a different outcome at trial. *Jackson*, 292 Mich App at 600-601.

Therefore, defense counsel's failure to object to the nurse's testimony did not fall below an objective standard of reasonableness.

## C. REFERENCE TO POLYGRAPH EXAMINATION

Defendant argues that defense counsel was ineffective for failing to object to the trial court's exposure to the polygraph information in the PSIR at sentencing or for failing to request that the information be stricken from the PSIR. We disagree.

Regarding the use of polygraph information at trial, MCL 600.2955(2) states, "A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field." This statute constitutes a codification of the *Davis-Frye* test,[3] which "allows the admission of expert testimony regarding novel scientific evidence only if the evidence has gained general acceptance among scientific experts in the field." *Clerc v Chippewa Co War Mem Hosp*, 267 Mich App 597, 607 n 1; 705 NW2d 703 (2005). To date, polygraph tests have not received such a degree of acceptance or standardization amongst the scientific community. See *People v Ray*, 431 Mich 260, 265; 430 NW2d 626 (1988). Although the results from a polygraph test may not be considered with regard to the truth or falsity of a witness, they may be considered with regard to the witness's general credibility. *People v Roberts*, 292 Mich App 492, 505-506; NW2d 290 (2011).

---

[3] See *People v Davis*, 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States*, 54 App DC 46; 293 F 1013 (1923).

The question of whether it was error for counsel to not request that defendant's polygraph results be removed from PSIR is a unique one, however. In *People v Newsum*, 105 Mich App 755, 759-760; 307 NW2d 412 (1981), the defendant entered into a plea agreement that involved his testimony against codefendants and taking a polygraph examination. During the polygraph, "he admitted to knowledge of and/or participation in approximately 100 larcenies and 20 B & Es," but did so only because "he was assured by the officer administering the examination that those admissions were confidential and would not be made available to the sentencing judge. The officer who gave the examination did not recall making any assurances to that effect and stated that he would not have done so in any event." *Id*. at 759. This Court agreed that the defendant was entitled to resentencing before a different judge "and that a new presentence report is to be prepared, which report shall not contain any reference to defendants admissions regarding involvement in numerous larcenies and breakings and enterings made during the polygraph examination," finding that it was unclear whether the defendant was fully aware of the consequences of admitting to those crimes or he made those admissions voluntarily or without inducement. *Id.* at 759-760.

In *People v Liddell*, 63 Mich App 491, 494-495; 234 NW3d 669 (1975), this Court discussed the inclusion of polygraph information being presented at a criminal competency hearing:

> Michigan courts have a consistent history of ruling polygraph examinations and opinion testimony based thereon to be inadmissible evidence. In addition to criminal trials, polygraph evidence has been ruled inadmissible in presentence reports, consideration for a motion for a new trial, during sentencing proceedings and in civil and administrative proceedings. Considering the statements and preparations by the trial court prior to his order for the defendant to submit to the examination, and considering the inculpatory results of the test, we cannot say that the consideration of the polygraph testimony constituted harmless error.

In the present case, the polygraph-examination results[4] were not mentioned at trial or at sentencing. Consequently, the jury was never exposed to the results. However, the results were listed and very briefly discussed in a single paragraph in the PSIR, indicating that the trial judge had been briefly exposed to them. That paragraph reads as follows on the bottom of page 3:

> A polygraph exam for Christian was scheduled for 06/22/2022 at the Oceana County Sheriff's office. The test results were that Christian was deceptive on all questions. Christian admitted [the victim] told him "No" during the sexual encounter. The polygraph report is available for review.

There is no evidence, however, that is paragraph or the results were called to the court's attention or that the trial court's exposure to the paragraph created an unacceptable atmosphere or environment that would require resentencing. The key question for us to consider is whether the

---

[4] We also take note of the fact that defendant, not the trial judge or the prosecution, requested that he be allowed to participate in a polygraph test. See *People v Allen*, 49 Mich App 148, 151-152; 211 NW2d 533 (1973).

court's limited exposure to a single improper polygraph reference warrants resentencing before a different judge.

In *People v Anderson,* 284 Mich App 11, 16; 722 NW2d 797 (2009), this Court observed that "generally, a court may neither solicit nor consider polygraph-examination results for sentencing, *People v. Towns*, 69 Mich App 475, 478; 245 NW2d 97 (1976), and the consideration of polygraph-examination results is generally considered error that requires resentencing, *People v. Allen*, 49 Mich App 148, 151–152; 211 NW2d 533 (1973)." Even though the trial court in *Anderson* requested that the defendant take the polygraph for purposes of determining whether he should register as a sex offender, this Court determined that the defendant was not entitled to appellate relief. *Anderson*, 284 Mich App at 16. In *People v Taylor*, 69 Mich App 475, 478-479; 245 NW2d 97 (1976), this Court did remand for resentencing before a different judge when the trial court compelled the defendant to take a polygraph prior to sentencing.

Here, by comparison, defendant asked to submit to the polygraph; the court did not request it. Additionally, there is no evidence that the trial court relied on the polygraph results when it sentenced defendant. The trial court never mentioned the polygraph information during sentencing. For these reasons, including the dearth of evidence that the trial court considered the polygraph paragraph prior to sentencing, defendant's due-process rights at trial were not violated, and any objection raised by defense counsel would have been futile. See *Shaw*, 315 Mich App at 674.

For these reasons, defendant is not entitled to resentencing. *Anderson,* 284 Mich App at 16; cf. *Taylor*, 69 Mich app at 478-479. Nevertheless, given the importance of the sentencing stage in the criminal process, we remand this case for the production of a corrected PSIR and the removal of the reference to the polygraph examination. See *People v Newsum*, 105 Mich App 755, 760; 307 NW2d 412 (1981).

## D. PREJUDICE

Even if defense counsel failed an objective standard of reasonableness, defendant has failed to prove a reasonable probability that, but for the alleged errors, the case's outcome would have been different. See *Jackson*, 292 Mich App at 601.

The jury heard a two-minute video which, according to the victim, accurately represented what happened after the rape. The video included an audio of defendant and the victim arguing, the victim crying, and the victim asking defendant why he did not stop after she asked him to stop. Police officers testified that the victim was hysterical, crying, and struggling to speak when they interviewed her at her apartment. The victim had bruises on her neck and arms and on her cervix. Other police officers searched for defendant in the general area where the abuse occurred and found him hiding underneath a fence line and tucked beneath a pine tree. Defendant admitted to the arresting officers that he had intercourse with the victim, but he insisted that the intercourse was consensual. Lastly, after his arrest, defendant met with a police detective and again admitted that he had intercourse with the victim, but denied that it was coercive. Moreover, he admitted that the intercourse was oral, vaginal, and anal. Defendant also admitted that he had a knife.

Because there was a significant amount of evidence that tended to prove defendant's guilt, defendant has failed to establish that, had it not been for defense counsel's alleged errors, the case's outcome would have been different. Consequently, we deny defendant's request for a new trial or resentencing.

III. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecution engaged in prosecutorial misconduct that required the trial court's intervention or an objection from defense counsel. We disagree.

Prosecutorial misconduct issues are generally reviewed de novo. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001). This Court must examine the pertinent portion of the record and evaluate the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). However, "[t]his Court reviews unpreserved constitutional errors for plain error affecting substantial rights." *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013) (quotation marks and citation omitted). An unpreserved claim of prosecutorial misconduct will not warrant relief unless the prejudicial effect was so great that curative instructions would have been ineffective. See *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 761, 763; 597 NW2d 130 (1999). If a defendant satisfies all three elements, he or she must show that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of his or her innocence. *Id*. at 763, 764.

The United States Supreme Court has stated that a prosecutor must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). Yet, it remains a prosecutor's duty to use every legitimate means to bring about a just outcome in a case. See *id*.

The test of prosecutorial misconduct is whether a defendant was denied his or her constitutional right to a fair and impartial trial. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). See also *Darden v Wainwright*, 477 US 168, 181; 106 S Ct 2464; 91 L Ed 2d 144 (1986). A prosecutor may not vouch for a witness's credibility "to the effect that he has some special knowledge concerning a witness' truthfulness." See *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). "A prosecutor may, however, argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Consequently, remarks made in a prosecutor's closing argument regarding a defendant's credibility do not necessarily constitute prosecutorial misconduct. *Id*. For example, in *Howard*, this Court stated that the prosecutor's comments in his closing argument merely advanced his position "that various claims made by [the] defendant were not credible in light of contradictory evidence adduced at trial." *Id*. The prosecutor did not vouch for the prosecution witness's credibility, but merely argued that the facts and evidence demonstrated the witness' credibility. *Id*. Such remarks are not improper. See *id*.

Defendant specifically takes issue with the prosecution's assertions that defendant pulled the victim's hair to get her into the backseat of the vehicle and that defendant used his knife to put

-8-

the victim in a place of greater danger and fear. Defendant argues that, in her testimony, the victim stated that the hair pulling occurred only while he kissed the victim. He insinuates that he did not pull the victim's hair for the purpose of getting her into the backseat of the vehicle. At the prosecution's request, the victim gave the jury a demonstration and said that defendant grabbed her hair and pulled it. She indicated that this was the first time that defendant had been violent with her. Given that defendant told the victim to get into the backseat of the vehicle immediately after he pulled her hair, this strongly suggests that defendant pulled the victim's hair with the intention of forcing her into the backseat. In other words, the prosecutor's assertion constituted a reasonable argument made on the basis of facts offered into evidence at trial. See *id*. As such, there is no evidence that the prosecution was vouching for the victim's credibility. See *id*. The prosecution merely offered a reasonable argument on the basis of the victim's testimony.

Regarding the pocketknife, defendant points out that the victim was uncertain as to whether the hard object pressed against her back was, in fact, defendant's knife. It is undisputed, however, that the victim saw defendant's pocketknife—an instrument that he frequently carried-- in his hand before the sexual assault. Although defendant disputed that their intercourse constituted an assault, he did not dispute that he had the knife in his possession during the intercourse; the victim testified to the same.

Also, police officers discovered the pocketknife on the backseat of the victim's vehicle where the assault occurred. Once again, putting two and two together, the prosecution made a reasonable argument on the basis of the victim's testimony at trial. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (citations omitted). The evidence revealed that defendant used the knife to intimidate the victim. The knife's mere presence accomplished its purpose of intimidation. Defendant has failed to show that the prosecution's arguments constituted a misstatement of the facts or a vouching for the victim's credibility. See *Howard*, 226 Mich App at 548.

Under the circumstances, there was no reason for defense counsel to object to the prosecution's closing argument or for the trial judge to intervene. See *Jackson*, 292 Mich App at 601. Even if such a reason existed, defendant has failed to establish a reasonable probability that the trial's outcome would have been different had defense counsel objected. See *id*. Moreover, defendant merely provides an unsupported cursory assertion that there was a reasonable probability of a different outcome if defense counsel had objected at trial. An appellant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

For these reasons, defendant has failed to establish that he was denied his right to due process or that defense counsel proved ineffective at trial. Defendant is not entitled to a new trial.

## IV.  SENTENCING

Defendant lastly argues that the trial court clearly erred by assigning defendant 10 points under OV 1 and by assigning defendant 10 points under OV 10.  We disagree regarding OV 1, but we agree regarding OV 10.

We review de novo whether the trial court properly interpreted and applied the relevant law to the facts.  *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019).  We review for clear error the trial court's factual findings in support of a particular score under an OV.  See *People v Dickinson*, 321 Mich App 1, 20; 909 NW2d 24 (2017).  A finding is clearly erroneous when this Court is left with the definite and firm conviction that a trial court made a mistake.  *Id*. at 21.

In 2015, the Michigan Supreme Court held that Michigan's sentencing scheme violated the Sixth Amendment of the United States Constitution as it "allow[ed] judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment [that] a defendant receives . . . ."  *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015).  Therefore, the Court ruled that these guidelines are advisory, not mandatory.  *Id*.  Still, the Court maintained that these guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion" and should be considered by trial courts when sentencing defendants.  *Id*. at 391.

### A.  OV 1

MCL 777.31(d) states that a trial court must assign a defendant 10 points under OV 1 when, during a defendant's aggravated use of a weapon, the victim "was touched by any other type of weapon[.]"  A defendant will be assigned five points when the weapon was merely displayed or implied.  MCL 777.31(e).  The term "weapon" includes a broad variety of instruments.  *People v Hutcheson*, 308 Mich App 10, 14-16; 865 NW2d 44 (2014).  The Legislature intended "to assess points for the use of weapons across the *broadest possible range of circumstances*, consistent with the goal of evaluating the appropriate sentence range for a particular defendant."  *People v Lange*, 251 Mich App 247, 257-258; 650 NW2d 691 (2002) (emphasis added).

The Michigan Supreme Court has established that a victim does not need to see a weapon touching him or her in order for the trial court to assign the defendant 10 points under OV 1.  See *People v McCuller*, 479 Mich 672, 678, 696; 739 NW2d 563 (2007).  In *McCuller*, 479 Mich at 678, the victim went outside and heard the defendant coming behind him.  When the victim turned around, he saw the defendant "swinging a blunt object that looked like a bat, a pipe, or a club at his head."  *Id*.  The jury convicted the defendant of assault with intent to do great bodily harm less than murder and assigned him 10 points under OV 1.  *Id*. at 678, 679.  The Michigan Supreme Court concluded that "the uncontroverted evidence showed that the victim was struck in the head with a bat, pipe, or club."  *Id*. at 696.  The type and severity of the injuries corroborated the testimony that the attacker used a blunt object, and the defendant did not challenge the testimony that he was armed or evidence pertaining to the type of weapon used in the assault.  *Id*.

Defendant argues that the evidence did not establish that the victim had been touched with defendant's pocketknife. Therefore, he argues, he should have been assigned only five points under OV 1. We disagree.

Like the victim in *McCuller*, the present victim saw the weapon in question before the crime occurred. See *id*. at 678. Unlike the *McCuller* victim, however, the present victim recognized and identified the pocketknife in defendant's possession— the same pocketknife that police officers discovered in the backseat of the victim's vehicle. The victim had seen defendant carry this pocket knife around with him on previous occasions. Also unlike in *McCuller*, there is no clear evidence that the weapon in question injured the victim. See *id*. at 696. Nevertheless, defendant admitted that he had a knife when he had intercourse with the victim. Notwithstanding the lack of injuries, the evidence and testimony, taken together, strongly indicate that the knife was the object that the victim felt pressed against her back during the crime. See *id*.

Consequently, the trial court did not clearly err when it assigned defendant 10 points under OV 1.

## B. OV 10

MCL 777.40(1)(b) states that a trial court must assign a defendant 10 points under OV 10 when the defendant exploits a vulnerable victim's "physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" If the defendant did not exploit a victim's vulnerability, the court must assign the defendant zero points. MCL 777.40(1)(d). MCL 777.40(3)(b) states that " '[e]xploit' means to manipulate a victim for selfish or unethical purposes."

MCL 777.40 does not define "domestic relationship." See *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011). However, this Court has stated that, for a dating relationship to rise to the level of a domestic relationship, "there must be a familial or cohabitating relationship." *Id*. at 448. If the parties did not share a domicile and were unrelated, the dating relationship cannot constitute a domestic relationship. See *id*. Moreover, a defendant can exploit a prior relationship for purposes of assigning points under OV 10. See *People v Wilson*, 252 Mich App 390, 395; 652 NW2d 488 (2002).

Here, the victim testified that she met with defendant before the assault was to discuss their prior relationship and to do drugs. Just before the assault occurred, defendant accused the victim of sleeping with someone else. Under these circumstances, it appears that, like the defendant in *Wilson*, defendant exploited his prior relationship with the victim. See *id*. Regardless, nothing in the record indicates that the victim and defendant were in a domestic relationship. The victim said that her relationship with defendant lasted about four months. Much of their relationship consisted of hanging out, doing drugs, drinking, and sexual activities. There was no evidence that the victim and defendant were related or that they lived together during their relationship, however. Consequently, the victim's relationship with defendant was not domestic. See *Jamison*, 292 Mich App at 448. Therefore, the trial court clearly erred by assigning defendant 10 points pursuant to OV 10.

Defendant's total OV score was 60 points, which meant that he was scored at OV Level V. See MCL 777.63. Subtracting the erroneously scored 10 points for OV 10 would lower defendant's total OV score to 50 points, which would still place him at OV Level V. See MCL 777.63 (setting the point range for OV Level V at 50 to 74 points). Therefore, despite the error, defendant's sentencing guidelines are not affected, and he is not entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) (When "a scoring error does not alter the appropriate guidelines range, resentencing is not required").

Affirmed but remanded to allow the trial court to remove the improper information from the PSIR. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young